**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 18 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

FLOYD SERNA,

     Plaintiff-Appellee,

v.

COLORADO DEPARTMENT OF
CORRECTIONS; DONNA GUYETT, Nurse;
DR. GUL; GERALD GASKO; JOHN DOES,

     Defendants,

and

JUANITA NOVAK, Warden, in her official
and individual capacity,

     Defendant-Appellant.

No. 04-1003
(D. Colo.)
(D.Ct. No. 02-D-191)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Circuit Judge, and **PORFILIO** and **BRORBY**, Senior
Circuit Judges.

---

     After examining the briefs and appellate record, this panel has determined

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Juanita Novak, Warden of the Colorado Territorial Correctional Facility ("correctional facility"), appeals the district court's denial of her motion for summary judgment with respect to a complaint filed against her pursuant to 42 U.S.C. § 1983 by Floyd Serna, an inmate at the correctional facility. We exercise jurisdiction under 28 U.S.C. § 1291, and reverse and remand.

**Factual Background**

The following summary of facts is viewed in the light most favorable to Mr. Serna, as the nonmoving party, and the facts concerning Warden Novak's conduct are substantially supported by the record or undisputed. Nevertheless, as pointed out hereafter, certain issues of fact exist, but are not material for the purpose of our summary judgment determination on the issue of excessive force.

To begin, it is undisputed Warden Novak ordered a lock down of the correctional facility in question after she received credible information a prisoner possessed a gun to be used in a planned escape. She also made a decision to

remove three suspected inmates from their cells in order to search their cells for the weapon. To do this, Warden Novak activated the correctional facility's Emergency Response Team and contacted the Director of Prison Operations at the Colorado Department of Corrections, who activated the department's Special Operations Response Team—the entity responsible for removing inmates from their cells so the cells can be searched. Warden Novak does not supervise the Special Operations Response Team and did not order the Special Operations Response Team to act.

According to Warden Novak, she knew the suspects, as well as their cell mates, would be removed from the cells, questioned, restrained, and taken to the infirmary for observation by a registered nurse for the purpose of ensuring no inmate suffered an injury. Although Warden Novak did not participate in the raid of the cells, it is her understanding the Special Operations Response Team does not approach inmates when a lethal weapon is involved. It is undisputed the Special Operations Response Team removed Mr. Serna from the cell he shared with a suspected inmate, took him to the infirmary, and then returned him to his cell after discovering he was not one of the suspects. Warden Novak then received a copy of Mr. Serna's anatomical form completed by a nurse at the infirmary on the date in question, which stated he suffered no injuries other than

red marks on his wrists.

Of dispute are facts concerning the treatment of Mr. Serna by the members of the Special Operations Response Team which removed him from his cell. It is Warden Novak's understanding the team ordered the inmates, including Mr. Serna, to lie on the floor, place their hands behind them with their palms out, and not move; after the inmates complied, they were reportedly ordered to crawl out of their cells backwards.[1]

Mr. Serna's account of the incident is quite different. He asserts the officers entered his cell, threw him to the ground, screamed obscenities at him while threatening him with weapons, and stomped and kicked him with their boots. They then dragged him to the medical unit for further investigation. He contends the nurse who completed the anatomical form never examined him, although he advised her he hurt everywhere but nothing seemed broken. After correctional personnel returned him to his cell, Mr. Serna began suffering pain in

---

[1] In her appeal brief, Warden Novak explained she understood the actions taken by the team complied with standard procedures followed in dealing with lethal weapons and removal of inmates from their cells. However, she did not provide information on any standard procedures, or her understanding of those procedures, in a sworn affidavit, or provide a copy of any such procedure for our review. Accordingly, we cannot rely on her version of standard department procedures provided in her brief which is not supported by the record.

his jaw and testicle and realized he sustained injuries to them. Mr Serna contends correctional personnel denied his request for medical care that evening due to the lock down, and continued to either fail to treat, or mistreat, his injuries for two years following the incident.

Medical reports and written complaints filed over the next two years clearly document injuries and complications involving Mr. Serna's jaw and testicle, including treatment by the same nurse the day after removal from his cell. After noting redness on his testicle, she provided him with ice and Motrin for his injuries, but nothing in her report indicates he told her he received an injury from the incident the night before—only that he was concerned about his hernia surgery five months prior. Medical records further show that a few days later, Mr. Serna saw a physician's assistant who provided Mr. Serna with Motrin for his pain after he complained of a sore jaw and testicle, which he told the physician's assistant he received when officers removed him from his cell four days before. Approximately eleven months later, after numerous requests for treatment and complaints of severe and disabling pain, an oral surgeon examined Mr. Serna and treated him for a temporomandibular joint injury to his jaw. One year and seven months after the incident, medical authorities scheduled surgery to repair Mr. Serna's damaged right testicle. However, medical personnel erroneously operated

on his left testicle, and he now experiences pain in both testicles.

**Procedural Background**

Thereafter, Mr. Serna filed a complaint against the State of Colorado, the Colorado Department of Corrections, Warden Novak in her official and individual capacities, and various unnamed officers and medical personnel employed by the correctional facility. Among other things, Mr. Serna claimed a violation of his Eighth Amendment right to be free "from unreasonable and excessive force upon his person during arrest/detention, and from cruel and unusual punishment" as a result of his beating, subsequent injuries, and lack of adequate medical care.

In an order dated January 6, 2003, the district court dismissed Mr. Serna's claims under 42 U.S.C. §§ 1985 and 1986, and his claims against the State of Colorado, the Colorado Department of Corrections, his monetary claims against Warden Novak in her official capacity, and his claims for injunctive relief against Warden Novak. However, the district court found Mr. Serna properly stated a claim under § 1983 against Warden Novak in her individual capacity. Following Warden Novak's Motion for Summary Judgment and Second Motion to Dismiss, the district court granted Warden Novak summary judgment on the inadequate medical care claim, but denied her motion on Mr. Serna's excessive force claim.

Warden Novak now appeals the district court's decision, arguing the district court should have granted her motion on the excessive force claim because she possesses qualified immunity and did not personally participate in, or supervise those involved in, the alleged deprivation; or alternatively, because no genuine issues of disputed fact exist as to the source or timing of those injuries or whether any excessive force applied was viable or necessary.

**Standard of Review**

In general, we review a summary judgment order *de novo*, considering the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000.)[2] Summary judgment is only proper where there are no genuinely disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 1164 (quoting Fed. R. Civ. P. 56(c)). With respect to claims of individual liability, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Craig v. Eberly* 164 F.3d 490, 493 (10th Cir. 1998). Movants may

---

[2] The district court's denial of Warden Novak's summary judgment motion based on qualified immunity is an immediately appealable "collateral order." *See Medina v. Cram*, 252 F.3d 1124, 1130-31 (10th Cir. 2001).

meet their burden by pointing out a lack of evidence on the nonmovant's essential claims. *Adler v. Wal-Mart Stores, Inc.* 144 F.3d 664, 671 (10th Cir. 1998). If this initial burden is carried, the nonmovant may not rest solely on his pleadings, but must set forth specific facts in support of his claims, by reference to affidavits, deposition transcripts, or other exhibits incorporated therein. *Id.*

This court reviews summary judgment orders deciding questions of qualified immunity different from other summary judgment decisions. *Holland v. Harrington,* 268 F.3d 1179, 1185 (10th Cir. 2001), *cert. denied,* 535 U.S. 1056 (2002). "When a § 1983 defendant raises the defense of qualified immunity on summary judgment, the burden shifts to the plaintiff to [first] show that ... the official violated a constitutional or statutory right." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). "If a favorable view of the facts alleged show[s] the violation of [such a] right, the next sequential step is to ask whether the right was clearly established at the time of the defendant's unlawful conduct." *Holland*, 268 F.3d at 1186 (internal quotation marks and citation omitted). When a plaintiff satisfies both these elements, the burden shifts to the defendant. If the defendant fails to establish there is no disputed material fact relevant to the immunity analysis, a motion for summary judgment based on qualified immunity should be denied. *Salmon v. Schwarz*, 948 F.2d 1131, 1136 (10th Cir. 1991).

With these standards in mind, we next address the constitutional issue raised and the requirement for successful litigation of a § 1983 claim against a prison official. The United States Supreme Court has stated "the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation marks and citation omitted). This includes a duty to protect prisoners from excessive force, *Berry v. City of Muskogee,* 900 F.2d 1489, 1493 (10th Cir. 1990), and an obligation to give necessary medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

In order for a defendant to succeed on a § 1983 claim in violation of the Eighth Amendment, he must show the deprivation is "sufficiently serious" and the prison official in question acted with "deliberate indifference" to his health and safety. *Penrod v. Zavaras,* 94 F.3d 1399, 1405-06 (10th Cir. 1996). Liability for "deliberate indifference" requires the prison official to be aware of the fact from which an inference can be drawn that a substantial risk of serious harms exists, and to draw such an inference. *See Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003). Thus, to establish a prison official's supervisor liability under the qualified immunity burden, the inmate must show "an 'affirmative link' exists between the constitutional deprivation and either the supervisor's 'personal

participation, his exercise of control or direction, or his failure to supervise." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (quotation marks, alteration and citation omitted). Stated another way, the supervisor must have actively participated or acquiesced in the constitutional violation. *See Holland,* 268 F.3d at 1187.

Specifically, as to claims of "excessive force," we apply two prongs in our analysis: "(1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (quotation marks, alteration and citations omitted). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

**Discussion**

As a threshold issue, Warden Novak first argues the district court erred in denying her motion for summary judgment on qualified immunity grounds, because Mr. Serna failed to establish a violation of a constitutional or statutory

right.  We disagree.

A factual dispute plainly exists on whether members of the Special Operations Response Team used excessive force and whether the injuries Mr. Serna clearly sustained stemmed from such force.  While Warden Novak attests of no knowledge of the use of excessive force or injuries caused by excessive force, Mr. Serna attests otherwise.  According to Mr. Serna, the officers in question "screamed obscenities at [him] while threatening [him] with weapons, and crushed [Mr. Serna's] jaw and testicles with their boots, knees, and/or bodies." Additionally, he claims he suffered injury to his jaw from officers shoving his face into the cement floor with great pressure and putting great pressure on his body.  He further states he never resisted during the attack nor did correctional facility officials ever believe he possessed a dangerous weapon.  Based on these material disputes of fact, and in viewing the evidence in the light most favorable to Mr. Serna as the nonmoving party, we conclude for the purposes of this summary judgment disposition only, that Mr. Serna met his burden, under the qualified immunity standard, of showing a violation of his constitutional right to be free from the use of excessive force.[3]

---

[3] As Warden Novak points out, the district court failed to provide any analysis on the issue of whether a constitutional violation of excessive force occurred.

The next question is whether Warden Novak is the official or supervisor with liability for the alleged violation. As mentioned, under his qualified immunity burden, Mr. Serna must show an "affirmative link" between the established constitutional deprivation and Warden Novak's personal participation, her exercise of control or direction, or her failure to supervise. *See Green*, 108 F.3d at 1302. The district court determined such an affirmative link existed, finding Warden Novak:

> exercised her discretion and control in activating the Emergency Command Center, locking down the facility and removing inmates ... from their cells .... Although [Warden] Novak may not have controlled or supervised [the Special Operations Response Team], she cannot deny having personal involvement in the raid or dispute that she exercised some degree of control over the removal and the employees whose actions allegedly resulted in physical injuries to [Mr. Serna], who was not alleged to be involved in the escape plot. Without her order, the raid and removal would not have occurred. [E]ven though [Warden Novak] disputes having had control over this team , she does not deny having control over or supervisory authority over those who did.

On appeal, Warden Novak argues the district court erred both in misapplying the qualified immunity burden of proof, and in finding questions of material fact exist concerning her supervisory role in Mr. Serna's alleged deprivation. She points out that while she activated the Emergency Command Center, ordered the lock down, and contacted the Director of Prison Operations for the Colorado Department of Corrections (who then activated the Special

-12-

Operations Response Team), she did not "supervise, train or equip" the Special Operations Response Team, nor supervise any official in charge of the team, and did not acquiesce in any unconstitutional conduct. She further asserts she acted with "objective legal reasonableness" in the actions she took, given the gravity of an inmate possessing a gun for the purpose of escape and the danger to those in prison and the public at large. Based on these and other reasons, she contends Mr. Serna failed to present any evidence to establish an "affirmative link" between her actions and those taken by the team which allegedly committed the deprivation. We agree.

Under any of the principles applied in examining qualified immunity, our study of the record leads us to conclude Mr. Serna failed to meet his qualified immunity burden of proof in establishing Warden Novak acted either with a culpable mind, "deliberate indifference," or knowledge of any substantial risk of bodily harm to Mr. Serna in either activating the Command Center or ordering a lock down. Similarly, Mr. Serna has not pointed to any evidence to establish Warden Novak ordered the Special Operations Response Team to act, or act in an unconstitutional manner, or that she knew they would act in such a manner when activated, or acquiesced in such conduct. He further fails to present evidence she personally participated with, exercised control or direction over, or supervised the

Special Operations Response Team in removing Mr. Serna from his cell. Rather, as stated in her affidavit, she does not supervise this team.

Moreover, while Mr. Serna may have suffered a constitutional deprivation, the district court erroneously found a disputed question remained as to Warden Novak's supervisory liability because she failed to "deny" she supervised those who supervised the Special Operations Response Team. Instead, it was Mr. Serna's burden, under the qualified immunity standard of proof, to show Warden Novak supervised anyone connected to his alleged constitutional deprivation.[4] He failed to meet this burden, as he has not shown Warden Novak supervised either the Director of Prison Operations for the Colorado Department of Corrections, who activated the team, or any other official involved with activating or supervising it. Finally, given Warden Novak's credible belief an inmate had a gun which placed numerous lives in danger, Mr. Serna has failed to show her act in contacting the Colorado Department of Corrections, assumably for the purpose of activating the Special Operations Response Team, constituted "deliberate indifference," or was without "objective legal reasonableness."

---

[4] Although a dispute of material fact exists as to whether Mr. Serna suffered his injuries as a direct result of the alleged deprivation committed by the Special Operations Response Team, we do not address this issue as it is immaterial to our disposition of this appeal.

Accordingly, no requisite "affirmative link" exists between Warden Novak and any alleged constitutional deprivation committed by the Special Operations Response Team against Mr. Serna in removing him from his cell. We therefore conclude the district court erred in denying Warden Novak's motion of summary judgment.

**Conclusion**

Therefore, for the reasons stated herein, we **REVERSE** the district court's denial of Warden Novak's motion for summary judgment on Mr. Serna's excessive force claim, and **REMAND** for further proceedings consistent with this opinion.

>                         **Entered by the Court:**
>
>                         **WADE BRORBY**
>                         United States Circuit Judge