**F I L E D**

PUBLISH

**July 26, 2006**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

FLOYD SERNA,

   Plaintiff-Appellee,

  v.

COLORADO DEPARTMENT OF
CORRECTIONS; JUANITA NOVAK,
Warden, in her official and individual
capacity, DONNA GUYETT, Nurse,
DR. GUL, and JOHN/JANE DOES,

   Defendants,

  and

GERALD GASKO,

   Defendant-Appellant.

No. 04-1241

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 02-D-191 (PAC))**

---

Edward T. Farry, Jr., Farry and Rector, L.L.P., Colorado Springs, Colorado, for
Defendant-Appellant.

Elisa Moran (John Mosby, Denver, Colorado, with her on the brief) Denver,
Colorado, for Plaintiff-Appellee.

---

Before **HARTZ**, **BRORBY**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

A prison special operations team forcibly removed Plaintiff-Appellee Floyd Serna from his cell based on reports that a prisoner, possibly his cell mate, had a loaded gun. Claiming he was injured during the incident due to excessive force, Serna filed a civil rights suit under 28 U.S.C. § 1983. He sued a number of correctional officials, including: (1) unidentified members of the prison special operations team; (2) the nurse and physician who treated his injuries; (3) the warden of the prison; and (4) Defendant-Appellant Gerald Gasko, the statewide director of prisons for Colorado. Serna's claims against Gasko were premised on his alleged supervision and control of the team that removed Serna from his cell.

Gasko moved for summary judgment, arguing that he was not liable for Serna's injuries under a theory of supervisory liability. The district court denied the motion. Since the court's order raised questions of qualified immunity, Gasko appealed. In light of the undisputed record below, we conclude that Gasko did not violate clearly established law, so summary judgment should have been granted in his favor. Accordingly, we reverse the district court's order.

## I. Background

### A. Factual Background

Serna was a prisoner at the Colorado Territorial Corrections Facility, a high security prison in Cañon City, Colorado. On February 2, 2001, the prison's

warden, Juanita Novak, received a report based on detailed information from an inmate that a prisoner possessed a gun. According to the report, the inmate claimed he had seen and handled the gun, gave specific details about its appearance, and claimed it was loaded. He also described three inmates' plans to use the gun to escape. One of the inmates allegedly involved with the gun was Serna's cell mate.

In light of this information, Novak initiated a series of response measures. First, she activated the Emergency Command Center, an off-site facility available for high risk or volatile prison emergencies. Second, she initiated a lockdown of the entire prison. Finally, she sought authorization to use the special operations response team (SORT), a SWAT-type unit, to remove the three suspects and their cell mates from their cells. Once the suspected individuals had been removed, guards intended to search the cells for the gun.

Before the SORT team could be activated, it had to be authorized by Gerald Gasko, Director of Prisons for the Colorado Department of Corrections. At the time of the responsive measures, Gasko was not at the prison; he was in his office in Colorado Springs, fifty miles away. As Colorado's Director of Prisons, he had authority to activate SORT but was not in charge of the officers who would enter the cell units. These officers would act under the direction of a SORT Commander at the prison, who reported to the Deputy Director of Prisons, who in turn reported to Gasko.

Serna describes in a declaration what happened when SORT arrived at his cell. He was in his cell during the early afternoon when "a large number of officers and agents in riot gear ran onto [his] tier and began screaming at [him and his cell mate] to get on the floor while they pointed weapons at [them]." Despite his full compliance with their orders, Serna claims that officers "crushed [his] jaw and testicles"; that they kicked him as he was lying on the floor face down; that three officers were on top of him while he lay on the floor—one stepping on his hand, one kneeling on his back, and another holding a gun in his side; that a boot pushed his face into the floor; that he was dragged, face down, by his feet for about 30–40 feet; and that a gun was put to his head while the officers screamed at him. Aple. App. at 2–3.

According to Serna, the officers thought he was the target inmate, and once they realized their mistake, they did not treat him so harshly. Following this treatment, Serna was taken to the medical unit. Serna claims the prison medical staff failed to adequately treat his injuries and returned him to his cell despite serious injuries to his jaw and one testicle. He further claims his injuries have never been adequately treated, but these allegations are not before us on appeal.

## B. Procedural Background

Serna's complaint named various individuals associated with the prison for violating his Eighth Amendment right to be free from unreasonable and excessive force as a result of the beating, subsequent injuries, and lack of adequate medical

-4-

care.  He sued the SORT team members, whom he has yet to identify; the medical staff who treated his injuries; Novak, the warden; and Gasko, the director of prisons.

The claims against Novak and Gasko are conceptually similar: they were responsible for activating the SORT team, which led to the excessive force that caused his injuries.  Both Novak and Gasko filed separate motions for summary judgment on the ground that they were not responsible for the SORT team's use of excessive force.

The district court denied Novak's motion on the basis that she could be liable as a supervisor of the SORT team.  We reversed on appeal, however, holding that Serna had not shown disputed facts "to establish Warden Novak ordered the Special Operations Response Team to act, or act in an unconstitutional manner, or that she knew they would act in such a manner when activated, or acquiesced in such conduct." *Serna v. Colorado Dept. of Corrections*, No. 04-1003, 2004 WL 1842991, at **5 (10th Cir. Aug. 18, 2004) (*Serna I*).  Accordingly, an "affirmative link" did not exist "between Warden Novak and any alleged constitutional deprivation committed by the Special Operations Response Team against Mr. Serna in removing him from his cell." *Id*. at **6.

Gasko also moved for summary judgment. In Gasko's motion, he argued that he could not be liable for the SORT officers' conduct because (1) they did not use excessive force; (2) even if they did, there was no "affirmative link" between him and the officers conducting the action; and (3) his conduct in approving the cell removal based on the warden's request was objectively reasonable and, thus, protected by qualified immunity. He acknowledged that he asked prison officials to advise him when SORT arrived at the prison and that he received updates throughout the day. However, no one informed him of any injuries or complaints from Serna. He never received any report of unconstitutional conduct arising from the operation, nor has he had direct contact with Serna at any time.

In support of his motion, Gasko described the procedures that the SORT team should have followed that day. SORT and other prison personnel would respond to the target cells but would not enter them. With officers on the outside, prisoners would be ordered to lie on the cell floor and not move. If the inmates complied, officers would open the door and order the prisoners to crawl out of the cell, feet first. Once out, the inmates would be placed in wrist and leg restraints by prison officers under cover of SORT personnel. The inmates would then be taken to the infirmary for examination.

The district court rejected Gasko's motion, concluding factual disputes precluded summary judgment. According to the court, the parties disputed

(1) whether the SORT team used excessive force in removing Serna from his cell, (2) whether the SORT team actually caused Serna's injuries, and (3) whether Gasko was personally involved in the incident. Because the Court concluded it "[did] not have a complete picture of what occurred on the day in issue," it also concluded it could not "reasonably rule that there are no genuine issues of material fact." Aplt. App. at 344.

## II. Standard of Review

Although appellate courts typically do not have jurisdiction to review denials of summary judgment motions, we have jurisdiction to hear interlocutory appeals where, as here, the defendant raises a qualified immunity defense and "the issue appealed concern[s] . . . whether or not certain given facts showed a violation of 'clearly established' law." *Johnson v. Jones*, 515 U.S. 304, 311 (1995). Because this sort of appeal raises the legal significance of the undisputed record below, we review such denials de novo. *Holland v. Harrington,* 268 F.3d 1179, 1185 (10th Cir. 2001).

"Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200–1 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (internal citations and quotations omitted).

Because of the underlying purposes of qualified immunity, we require a plaintiff to satisfy a "heavy two-part burden" to avoid summary judgment: (1) "that the defendant's actions violated a constitutional or statutory right" and (2) that the right "was clearly established at the time of the defendant's unlawful conduct." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Serna must thus show evidence that Gasko affirmatively violated a constitutional right and that the right was clearly established at the time.

At the summary judgment stage, merely pointing to an unsworn complaint is not enough. A plaintiff has an obligation to "present some evidence to support the allegations; mere allegations, without more, are insufficient to avoid summary judgment." *Lawmaster v. Ward*, 125 F.3d 1341, 1349 (10th Cir. 1997). The plaintiff must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992).

With respect to claims of individual liability, the party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact, including a lack of evidence supporting the plaintiff's claims. *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998). The plaintiff cannot rest

on the pleadings at this point but must set forth specific facts by reference to affidavits, deposition transcripts, or other exhibits to support the claim. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (noting that on summary judgment, the plaintiff can no longer rest on the pleadings," so we "look[] to the evidence before [us]" when determining whether an officer's conduct violated clearly established law).

### III. Discussion

Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates. "[T]here is no concept of strict supervisor liability under § 1983." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996); *see also Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) ("Liability . . . must be based upon more than a mere right to control employees."). "This does not mean that a supervisor may not be liable for the injuries caused by the conduct of one of his subordinates. It does mean that his liability is not vicarious, that is, without fault on his part." *Scull v. New Mexico*, 236 F.3d 588, 600 (10th Cir. 2000) (citation omitted).

Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights. To establish supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the

violation. Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" *Jenkins*, 81 F.3d at 994–95 (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992)). In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation. *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006).

In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution. Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. *Holland v. Harrington,* 268 F.3d 1179, 1187 (10th Cir. 2001); *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997). In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior. Because "mere negligence" is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. *Green*, 108 F.3d at 1302; *see also Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) ("Liability . . . cannot be based upon simple negligence.").

Serna thus has the burden of establishing that (1) the SORT officers applied excessive force and (2) an "affirmative link" ties Gasko to the violation of Serna's constitutional rights, namely, that Gasko (a) actively participated or acquiesced in the SORT team's application of excessive force and (b) was deliberately indifferent to its application. We discuss each element in turn.

## A. Excessive Force

The underlying violation that Serna attributes to Gasko is the SORT officers' use of excessive force during the cell extraction. "After incarceration," the Eight Amendment prohibits "the unnecessary and wanton infliction of pain" on prisoners. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The "core inquiry" for an Eighth Amendment excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 US 1, 7 (1992). The Tenth Circuit has articulated two "prongs" that a plaintiff must show to prevail on such a claim: (1) that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation," and (2) "that the officials acted with a sufficiently culpable state of mind." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (internal quotation marks omitted). We can infer malicious, sadistic intent from the conduct itself where "there can be no legitimate purpose" for the officers' conduct. *Id.* at 1213.

In this case, we need not linger with this element. Serna claims he suffered significant and painful injuries as a result of the SORT operation. We already held in *Serna I* that "[a] factual dispute plainly exists on whether members of the Special Operations Response Team used excessive force and whether the injuries Mr. Serna clearly sustained stemmed from such force." 2004 WL 1842991 at **4. Although the parties continue to dispute the source and extent of Serna's injuries, for purposes of this appeal, we need not revisit this argument and can assume that Serna satisfied his burden of showing disputed facts regarding the application of excessive force by the SORT team.

## B. *Affirmative Link*

The next requirement is that Serna must show a genuine issue of material fact as to whether there was an "affirmative link" between Gasko and the SORT team's application of excessive force. In denying summary judgment, the district court cited two reasons for its denial: (1) Gasko admitted that he activated the SORT team at the request of the warden; and (2) many of Serna's allegations in the complaint had gone unrefuted. The court stated, "there is no evidence as to what instructions were given by Gasko, what policies were in place, or how officers were supervised." Aplt. App. at 344.

### 1. *Active Participation or Acquiescence*

The first aspect of the affirmative link is the supervisor's own conduct, that he "actively participated or acquiesced in the constitutional violation." *Holland*

-12-

*v. Harrington*, 268 F.3d at 1187. This evidence may take various forms: "the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Holland*, 268 F.3d at 1187; *Green*, 108 F.3d at 1302; *see also* Kit Kinports, *The Buck Does Not Stop Here: Supervisory Liability in Section 1983 Cases*, 1997 U. Ill. L. Rev. 147, 169 (summarizing factors pointing to supervisory liability). A plaintiff may also establish an affirmative link where the supervisor "tacitly authorized the offending acts." *Wever v. Lincoln County*, 388 F.3d 601, 606 (8th Cir. 2004). In the end, however, supervisory liability "must be based upon active unconstitutional behavior" and "more than a mere right to control employees." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999).

Serna points to two acts that could establish a link between Gasko's conduct and the application of excessive force: direct participation and failure to supervise. Neither is persuasive.

### a. Direct Participation

Serna's primary argument is that Gasko directly participated in the cell removal by directing the actions of SORT team members. This claim fails for lack of evidence.

The only evidence that Gasko personally participated in the SORT team's removal of Serna is (1) his decision to authorize the SORT team and (2) his receipt of periodic reports during the operation.

As to the first point, no evidence supports Serna's argument that Gasko directed the SORT team to apply excessive force. Surely Serna could proceed if he had evidence Gasko ordered the SORT team to act as it did, but the undisputed record establishes that the SORT officers were acting contrary to Gasko's instructions when they harmed Serna. No evidence suggests Gasko did anything more than allow the warden to use the SORT team to search Serna's cell. Nothing suggests he directly supervised the on-site conduct of the team from 50 miles away or participated in the planning and execution of the operation. In fact, the only record evidence is that the SORT team was authorized to proceed in a specific manner: officers outside the cell would order prisoners to lie down; the inmates would be ordered to crawl out of the cell feet first, where they would be restrained; the inmates would then be taken to the infirmary for a physical examination.

Serna does not argue this procedure was unconstitutional, and we would be hard pressed to say it was an unreasonable response to a report of a loaded firearm in a prison cell. *See, e.g., Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (describing excessive force in prison context); *Giron v. Corrections Corp. of Am.*, 191 F.3d 1281, 1289 (10th Cir. 1999) (stating that in an excessive force claim "where prison officials were using force to keep order," we must balance "the need 'to maintain or restore discipline' through force against the risk of injury to inmates"). The policy strikes an appropriate balance between the

need to resolve dangerous situations with minimal force and the need to ensure prisoner safety. Because Gasko merely authorized the SORT team to follow a procedure that was constitutionally appropriate for the circumstances, his authorization by itself does not implicate him in the unconstitutional acts of the SORT team.[1]

As to the second point, the fact that Gasko received periodic reports about the operation does not suggest he directed the application of force against Serna. No evidence suggests Gasko used these communications to instruct the officers to act unconstitutionally. To the contrary, as a result of these reports, Gasko believed the cell removal occurred without incident and according to policy.

In short, at the summary judgment stage, something more than conjectural allegations are necessary to establish direct participation by an official in the chain of command, whether the SORT team commander, the warden of the prison,

---

[1] Serna claims Gasko's decision to use the SORT team was itself so unreasonable as to be actionable under § 1983. We have held that "the decision to deploy a SWAT team" to enter a private residence to arrest a person for a misdemeanor could be challenged under the Fourth Amendment. *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1190–91 (10th Cir. 2001). But for the reasons discussed above, to use SORT in a volatile prison context under these facts does not create an independently actionable claim under § 1983.

or the director of prisons.[2]  Serna has shown no evidence that Gasko directed the SORT team's conduct, either at the outset or at any point during the incident.

### b. Failure to Supervise

Serna's alternative theory is at odds with the first.  He claims Gasko failed to adequately supervise or control the SORT team in his capacity as Director of Prisons.  This, of course, is true as a matter of fact—Gasko did *not* directly supervise the SORT team.  The problem with this argument is that nothing in the record suggests Gasko was expected to supervise them, either directly or indirectly.  Our cases make clear that failure to supervise is only actionable under § 1983 against a defendant who had a duty to supervise.  *See Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988) ("Unless a supervisor has established or utilized an unconstitutional policy or custom, a plaintiff must show that the supervisory defendant breached a duty imposed by state or local law which caused the constitutional violation.").

Here, no record evidence suggests Gasko had any duty to supervise the SORT team's on-the-ground operations.  To the contrary, the SORT team was supervised by an on-site commander, who reported to the Deputy Director of Prisons, who then reported to Gasko.  And Serna can point to nothing in the

---

[2] It is worth noting that Serna did not ask for additional discovery as a result of Gasko's motion for summary judgment, and counsel conceded at oral argument that Serna is not claiming he was denied discovery necessary to respond to the motion.

record that would suggest Gasko was responsible for the training or planning of the operation at issue here.[3]  In short, Serma can only claim that Gasko approved the use of the SORT team, and on these facts mere approval of the search is not enough.

To survive a summary judgment motion, Serna had the obligation to come forward with some evidence that would establish that Gasko failed to perform some supervisory duty.  Because Serna did not do so, the district court should have granted summary judgment in Gasko's favor.

## 2. Deliberate Indifference

Finally, to establish liability under § 1983, Serna must also establish that Gasko had a culpable state of mind.  In the context of supervisor liability under § 1983, "mere negligence" is not enough.  Rather, "[l]iability of a supervisor under § 1983 must be predicated on the supervisor's deliberate indifference." *Green*, 108 F.3d at 1302; *see also Wever v. Lincoln County*, 388 F.3d 601, 606 (8th Cir. 2004).  Deliberate indifference requires that the official "both be aware of facts from which the inference could be drawn that a substantial risk of serious

---

[3] Serna argues opaquely that Gasko had a duty to train the SORT team and that he failed to discharge that duty.  His only authority is *McKee v. Heggy*, 703 F.2d 479 (10th Cir. 1983), a case involving municipal liability, which he cites for the proposition that a supervisor who fails to train his subordinates can be liable for their unconstitutional acts "even though he was unaware" of the acts when they happened. *Id.* at 483.  But, once again, Serna has failed to show that Gasko was responsible for training the SORT team or had any affirmative knowledge regarding its preparation for this operation other than the mere act of approval.

harm exists, and he must also draw the inference." *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003); *see also Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006).

Serna must therefore point to evidence that would establish Gasko knew he was creating a situation that created a substantial risk of constitutional harm. The only record evidence is that Gasko believed the SORT team could safely and effectively respond to the threat of prison violence arising from the report of a loaded gun, and Serna has not challenged that evidence. Nor has he offered any evidence that Gasko turned a blind eye to evidence that would contradict that belief, such as a pattern or practice of constitutional abuses by his subordinates on prior occasions.

In short, Serna has not established any disputed facts from which a jury could infer that Gasko was aware of a substantial risk of serious harm arising from the activation of the SORT team. The evidence shows only that Gasko, as a high-level supervisor, authorized the use of the SORT team to respond to a dangerous situation at the warden's request. Nothing suggests he wanted to harm Serna or to ignore harm done by his subordinates.

Thus, even if we were to conclude Gasko actively participated in the officers' conduct, we still could not conclude on this record that a factual dispute existed as to Gasko's deliberate indifference. Accordingly, summary judgment in favor of Gasko is appropriate.

## IV. Conclusion

Section 1983 is not a vicarious liability provision. Every governmental official in the chain of command is liable only for his own conduct. In any § 1983 action, the plaintiff must demonstrate the liability of each supervisory official against whom a claim is made. It may be tempting to name every individual in the chain of command. But that alone is insufficient to survive summary judgment.

As this case demonstrates, the burden is on the plaintiff to develop facts that show the defendant's responsibility for a constitutional violation. Without something more than speculation, such a claim will fail. Here, Serna has failed to show disputed evidence that could establish both the conduct and scienter requirements of supervisory liability. In the absence of this evidence, he has not demonstrated that Gasko was responsible, directly or indirectly, for his injuries.

Because the undisputed record shows that Gasko did not violate clearly established law under a theory of supervisory liability, we REVERSE the district court's order denying summary judgment and REMAND for proceedings consistent with this opinion.