**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 8, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

RUSSELL MARSHALL BOLES,

Plaintiff - Appellant,

v.

DEVIN NEWTH, IRIS CHRISTIANS,
MELLISSA PECK, MICHELLE
ABNEY, JIM LONG, C. L.
HUMPHREY, KEVIN MILYARD and
REBECKA OAKS,

Defendants - Appellees.

No. 11-1510
(D.C. No. 1:09-CV-00223-REB-MJW)
(D. Colorado)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **ANDERSON**, and **HARTZ**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

This is an appeal of the dismissal of various civil rights claims asserted by Russell M. Boles, who was incarcerated within the Colorado Department of Corrections at the time he filed his amended complaint on March 24, 2009, but who was released on February 23, 2010, and, apparently, discharged from his term of parole on June 23, 2011. R. Vol. 1 at 295. Mr. Boles' complaint, filed pursuant to 42 U.S.C. § 1983, asserted various claims against corrections officials at the Sterling Correctional Facility, including denial of medical care, denial of access to the courts, failure of the warden to supervise, wrongful confiscation and destruction of property in retaliation for his threat to sue, and false imprisonment for failing to properly calculate his sentence and grant him immediate parole. He seeks compensatory and punitive damages.[1] For the reasons set out below, we affirm.

## I. Background

With one exception, the claims in Mr. Boles' complaint all relate to or stem from events that happened on December 18, 2008. On that date, Mr. Boles was scheduled to be transported from Sterling to the Denver Receiving and Diagnostic Center ("DRDC") to have surgery for the removal of a cataract in his right eye. The stay at DRDC was to last for about a week.

---

[1]Mr. Boles concedes that because he is no longer in custody, remedies in the form of declaratory or injunctive relief are no longer available. Appellant/ Pet'r's Opening Br. at 9.

When Mr. Boles arrived at the transport room, he brought with him a BiPap and an oxygen concentrator which he used to treat his sleep apnea. Although no prior arrangements had been made, he insisted on taking these devices on the transport vehicle.[2] Officers Peck, Newth and Abney refused to let him. A stand-off ensued, the upshot of which was that Mr. Boles refused to be transported for surgery without the devices, and he missed his appointment. He asserts that these events amounted to a denial of medical care for his cataract.

Before the officers returned Mr. Boles to his cell, they inspected the cell for compliance with regulations which permit a maximum of five cubic feet of storage: a three-cubic-foot container for personal items, including prison-issued clothing, and a two-cubic-foot container exclusively for legal papers. Certain additional items may also be stored, including objects for medical purposes, and some religious items. AR 850-06 III. K., R. Vol. 1 at 248.

The officers determined that excessive material was stored in the cell, and they confiscated the excess as contraband. According to Mr. Boles, when he returned to his cell he found an undetermined amount of property, including a holiday gift package from his son, missing. He also discovered that some of his religious objects had been damaged.

---

[2]The combined size of these two pieces of equipment is not described, but was probably not insignificant.

Among other things, Boles alleges that confiscation of some of his legal materials resulted in a denial of access to the courts; that his practice of his religion was affected; and that the search and confiscation were done to retaliate against him for threatening to sue over the missed eye surgery.

Prison regulations provide that confiscated material may be mailed out of the facility by the prisoner at his expense, or donated. Failing either of those options, the material will be destroyed. From December 2008 into March 2009, Mr. Boles alleges that he tried various ways to preserve the property confiscated from his cell. He was not successful in those efforts which at some point allegedly involved an offer of postage stamps to cover mailing. Ultimately, the confiscated property was destroyed, which, according to Mr. Boles, was in retaliation for his filing this lawsuit. He seeks damages for the destroyed property and retaliation.

The district court referred the matter to a magistrate judge, and Mr. Boles' claims were thereafter addressed in stages. The district court sua sponte dismissed the claim for denial of parole per Heck v. Humphrey, 512 U.S. 477 (1994). Thereafter, on motion by the defendants, the district court adopted the magistrate judge's recommendations and dismissed all but two claims without prejudice, pursuant to Fed. R. Civ. P. 12(b)(6). The two remaining claims were those alleging retaliation by defendants Peck, Newth and Abney and denial of access to the courts by defendant Humphrey. Those defendants subsequently

-4-

moved for summary judgment on the foregoing claims, and that motion was ultimately granted. A final judgment, which incorporated all of the court's dispositive orders both as to the claims dismissed without prejudice for failure to state a claim and the two remaining claims resolved on summary judgment, was entered pursuant to Fed. R. Civ. P. 58, on October 18, 2011. Mr. Boles appeals that judgment in its entirety. The district court granted Mr. Boles leave to proceed *in forma pauperis*.

## II. Claims Dismissed Without Prejudice Pursuant to § 12(b)(6)

We review a district court's dismissal on a Rule 12(b)(6) motion de novo. Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009). We do not assess credibility; rather, we only consider whether the allegations, taken as true, are legally sufficient to allow the suit to proceed. See id. "[W]e accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." Id. To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "'[P]lausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)

-5-

(quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (further quotation omitted). In applying these rules, and in our analysis, we read Mr. Boles' pro se complaint liberally. See Haines v. Kerner, 404 U.S. 519, 20-21 (1972).

## A. Denial of Prescribed Medical Treatment

Claim One of Mr. Boles' complaint is entitled "Denial of Prescribed Medical Treatment," and states the following supporting facts: "Defendants Newth, Peck and Abney forced me to forego necessary prescribed eye surgery. They violated the D.O.C. Administrative regulation which provides that a prisoner may take all prescribed medical appliances with him on a trip outside the facility, in refusing to allow me to do so." R. Vol. 1 at 60. He then alleges that the asserted "violations happened consequent to a facility scheduled extended stay medical trip to Denver Health. I would have been required to stay over at D.R.D.C. for a week or more." Id. The complaint then described Mr. Boles BiPAP and oxygen concentrator and their use for his central sleep apnea, "which puts my life at risk. Even if I don't die, the resulting hypoxia causes further brain damage." Id.

"A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment." Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005).

Deliberate indifference "involves both an objective and a subjective component." Id. (quotation omitted). For the objective component, a prisoner must provide "evidence that the deprivation at issue was in fact sufficiently serious." Id. (quotation omitted). The subjective component requires "evidence of the prison official's culpable state of mind," which may be fulfilled by showing that the official "[knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference." Id. (brackets and quotation omitted).

However, as the magistrate judge noted, "a delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005) (quotations omitted). The court then found that Mr. Boles "has not alleged any harm, let alone substantial harm, resulted from the delay in his surgery." Recommendation on Def.'s Mot. to Dismiss at 8, R. Vol. 1 at 156. We agree. Furthermore, Mr. Boles does not allege that his cataract surgery could not or would not be rescheduled within a reasonable period of time within which differences regarding the transport of his medical devices could be resolved.

There is, of course, another way to look at this situation. On the face of the complaint, it appears that the prison guards were not deliberately indifferent or had any culpable state of mind whatsoever with respect to Mr. Boles' cataract surgery as such. They were ready, willing and able to transport him for the scheduled procedure. The state of mind that the guards had at the time was directed at what they considered to be unacceptable terms and conditions placed on the transport by Mr. Boles—the transport of apparatuses which Mr. Boles insisted on having for a condition unrelated to his eye surgery. And, as to that condition, the complaint is silent with respect to whether the guards had any knowledge about Mr. Boles' sleep apnea problem or the need for his devices, or the probability of any harm resulting from not having the devices. That omission in the complaint extends to whether or not the guard had knowledge of AR 850-06 IV. F. 3., R. Vol. 1 at 253, which, under certain conditions, allows prescribed medical equipment to accompany a prisoner being transported.

Notably, Mr. Boles' complaint also does not allege that devices to take care of his sleep apnea were absolutely unavailable at the health facility he was visiting, or that being deprived of the devices for several days would place him in imminent harm rather than the theoretical possibility of such harm.

In any event, it is clear that Mr. Boles is the one who refused transport for his eye cataract surgery. The fact that he insisted on placing conditions on his transport, in addition to the problem of alleging nothing more than a delay in

treatment, resolve the issue against Mr. Boles. Accordingly, we conclude that the district court did not err in dismissing this claim without prejudice for failing to state a claim for relief under the applicable standards.

## B.     Interference With and Denial of Access to the Courts

Claim 2 of the complaint is entitled "Interference With and Denial of Access to the Courts." It contains a litany of only partly related allegations, and a separate allegation of retaliation with respect to the confiscation and destruction of property—an allegation dealt with separately in Section III, below, addressing summary judgment.[3]

Mr. Boles complains that as a result of the alleged damage to and confiscation of his legal materials, he had to ask for enlargements of time in most or all of the cases he was litigating, resulting in delay. He then asserts that "some" evidence is missing which "may" affect the outcome of those cases to which it pertains and that "missing evidence may" mean one case doesn't get filed. Further, he alleges that defendant Humphrey "also requested that I be denied law library time" and "attempted" to stop Mr. Boles from attending a

---

[3]In Claim Two, as well as other parts of his complaint, Mr. Boles also alleges that Warden Milyard is liable for failing to supervise or train the other defendants in this case. However, a plaintiff cannot establish liability under § 1983 merely by "show[ing] the defendant was in charge of other state actors who actually committed the [constitutional] violation. Instead, . . . the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights." Dodds v. Richardson, 614 F.3d 1185, 1195 (10th Cir. 2010) (quoting Serna v. Colo. Dep't of Corr., 455 F.3d 1146, 1151 (10th Cir. 2006). Mr. Boles' allegations do not satisfy this standard.

scheduled telephone court conference in another case. He also asserts that defendant Humphrey refused to properly process grievances and that Officer Long "with physical gesture and vocal statement threatened me with possible physical harm and definite confiscation of all my legal materials." R. Vol. 1 at 61.

The magistrate judge's report and recommendation deals with these allegations at length, and we agree with the analysis. The core of the matter, however, is alleged denial of access to the courts. But, nothing in Claim Two identifies any specifies, including any actual prejudice to a specified case. To the contrary, the allegations are vague, conclusory and general. To state an actionable claim of denial of access to the courts, the Supreme Court requires that an actual injury be alleged. Lewis v. Casey, 518 U.S. 343 (1996). Thus, as we stated in a case raising a claim similar to the one here:

> [Appellant] also fails to state a proper claim of violations of his constitutional right to access the courts. He alleges that Defendants engaged in confiscating, reviewing, and hindering access to his legal files, hindering his communications with a jailhouse lawyer, denying him access to a law library, and interfering with his legal mail. But as the district court correctly held, a prisoner must demonstrate actual injury from interference with his access to the courts—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement. See Lewis v. Casey, 518 U.S. 343, 351-55 (1996). [Appellant's] access-to-the-courts allegations fail this test.

Gee v. Pacheco, 627 F.3d 1178, 1191 (10th Cir. 2010). As in Gee, Mr. Boles' access to the courts allegations in this case fail the Lewis test. See Peterson v. Shanks, 149 F.3d 1140, 1145 (10th Cir. 1998) ("To present a viable claim for

-10-

denial of access to the courts . . . an inmate must allege and prove prejudice arising from the defendant's actions.)

## C.  Alleged "Wrongful Confiscation and Destruction of Personal Property"

For his third claim, Mr. Boles asserts that Defendants Newth, Peck, Abney and Christians wrongfully confiscated, damaged and destroyed his personal property, including damage to religious objects and religious books,[4] and that in retaliation for his filing of this action, defendant Christians refused to mail out the confiscated property, although he offered postage for that purpose, and then destroyed that property.

The magistrate judge recommended dismissal of these claims pursuant to the Parratt/Hudson Doctrine,[5] which holds that the unauthorized deprivation of inmate property by prison officials does not state a cognizable cause of action under § 1983 if the prisoner has an adequate post-deprivation remedy.  The magistrate judge identified two such remedies:  the prison grievance system under AR 850-04 or an action in state court invoking the "willful and wanton" act

---

[4]As a result, Mr. Boles alleges religious discrimination and a violation of the Religious Land Use and Institutionalized Persons Act.  But he fails to allege any inability to practice his religion, or any cognizable burden.  Accordingly, we agree with the magistrate judge's analysis of the issue and recommendation that this issue be dismissed.  Recommendation at 6, R. Vol. 1 at 164.

[5]Hudson v. Palmer 468 U.S. 517, 534, 104 S. Ct. 3194, 82 L. Ed.2d 393 (1984); Parratt v. Taylor, 451 U.S. 527, 541, 101 S. Ct. 1908, 68 L. Ed.2d 420 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed.2d 662 (1986).

exception to the Colorado Governmental Immunity Act pursuant to C.R.S.A. § 24-10-118(2). Recommendation on Mot. to Dismiss at 13, R. Vol. 1 at 161.

For § 12(b)(6) purposes, the district court disagreed that the prison grievance procedures were adequate, at least as to defendant Humphrey (and presumably the other defendants), because of the allegation in Claim Two that defendant Humphrey was denying Mr. Boles access to the grievance procedures. Order dated Mar. 17, 2010, at 2, n.1, R. Vol. 1 at 188. However, the court agreed with the magistrate judge that state law provided an adequate remedy pursuant to C.R.S.A. § 24-10-118, citing our unpublished panel opinion in Ali v. Reeves, 232 Fed. Appx. 777, 2007 WL 1219424 (10th Cir. April 26, 2007). Accordingly, the court dismissed Count Three as to all defendants, including the adoption of the magistrate judge's recommendation that the retaliation claim against defendant Christians be dismissed as too conclusory to state a claim.

Notably, Mr. Boles has not disputed the availability of § 24-10-118(2) as an avenue for redress. He did not respond to the government's citation of that statute in its motion to dismiss, and did not address it in his objections to the magistrate judge's recommendation. (Rather, he stated only that, "In general the law librarians will not allow use of state resources to file claims in small claims court. I've tried it on the sly and found it to be unavailing to me as an inmate because I cannot go to that court." Obj. to Magistrate's Recommendations, March 12, 2010, at 6; R. Vol. 1 at 176.)

On appeal, Mr. Boles continues to remain silent about § 24-10-118(2). He does not dispute the district court's finding on that subject and makes no mention at all regarding state court post-deprivation remedies.

While the applicability of the statute in question might not be immune from debate, it is not our role to raise and frame the issue, then research it for something favorable to Mr. Boles. See Yang v. Archuleta, 525 F.3d 925, 927, n.1 (we do not act as a pro se filer's advocate). And, since we also agree with the magistrate judge's analysis and recommendation with respect to the retaliation claim against defendant Christians and the claim of religious discrimination, we conclude that the district court did not err in dismissing the claims under Claim Three without prejudice for failing to state a claim for relief.

**D.    Alleged False Imprisonment by Confinement Beyond Statutory Limit**

Claim Four of the complaint alleges that Mr. Boles was incarcerated beyond the statutory limit prescribed by C.R.S.A. § 18-1.3-401(6). His main target in this claim is State Parole Board member Rebecka Oaks whom he accuses of wrongfully denying him parole at an April 2008 hearing. He then accuses defendant Humphrey of failing to do his duty to clear the matter up with "time comp," and accuses Warden Milyard of failing to intervene in Boles' alleged release date discrepancy. As to all of this, Mr. Boles asserts that defendant Humphrey violated his First Amendment rights by interfering with or obstructing the grievance process, and that his constitutional liberty interest was affected;

and, finally, that he suffered cruel and unusual punishment because of severe emotional stress which affected his health. For these things, Mr. Boles seeks compensation for each day of unlawful confinement, and for physical and emotional hardship. Amended Compl. at 6½, 8, R. Vol. 1 at 63, 65.

The district court dismissed this claim at the outset of the litigation pursuant to Heck v. Humphrey, 512 U.S. 477 (1994), which holds that if a judgment for damages would imply the invalidity of a conviction or sentence, a § 1983 action does not arise until the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by the issuance of a federal habeas writ. See Heck, 512 U.S. at 486-87. Order, dated April 16, 2009; R. Vol. 1 at 69. Mr. Boles claims on appeal that he was "not attacking his sentence but only an unlawful extension of it," and that if a habeas action is required then he should be granted a COA. Finally he asserts that since he is no longer in custody and cannot file a habeas action, he should be permitted to proceed under § 1983. Appellant/Pet'r's Opening Br. at 5, 20.

As to the latter point, we did hold recently that a "petitioner who has no available remedy in habeas, through no lack of diligence on his part, is not barred by Heck from pursuing a § 1983 claim." Cohen v. Longshore, 621 F.3d 1311, 1317 (10th Cir. 2010). Mr. Boles would have trouble on the diligence part since the Parole Board action he complains of occurred in April 2008, and Mr. Boles

-14-

was not released from confinement until February 25, 2010. R. Vol. 1 at 295. During that period he apparently found time to sue Ms. Oaks, and the State Parole Board unsuccessfully in state court. See, e.g., Boles v. Oaks, Logan Co. Colo. Dist. Ct. No. 08CV49, decided July 2, 2009.

However, the core of Mr. Boles' difficulties on this claim lies elsewhere. His allegations of unlawful confinement are so opaque as to be meaningless. He refers to C.R.S.A. § 18-1.3-401(6), which provides in part "that in no case shall the term of sentence be greater than twice the maximum nor less than one-half the minimum term authorized in the presumptive range for the punishment of the offense." But he does not cite to the presumptive range for his sentence or provide any calculations. We do know from our opinion denying Mr. Boles a COA regarding his 28 U.S.C. § 2254 petition that he was convicted in state court of three counts of felony menacing and was given three consecutive six-year sentences (i.e., 18 years in prison, less applicable good time credits, if any). See Boles v. Neet, 52 Fed. Appx. 104, 2002 WL 31667911 (10th Cir. Nov. 27, 2002).[6]

In addition, Ms. Oaks, as a member of the State Parole Board, is absolutely immune from suit for her decisions. See Russ v. Uppah, 972 F.2d 300, 302-03 (10th Cir. 1992). But we do not decide on that basis. Although on different

_____

[6]Because Mr. Boles' allegations are so vague and conflicting, it is impossible to suggest what type of action could be brought after April 2008. However, it is clear that Colorado permits post-conviction remedies both for sentences that exceed the maximum authorized by law or for claims that the sentence imposed has been fully served. C.R.S.A. § 18-1-40(d)(h).

grounds, we uphold the district court's dismissal of this claim without prejudice due to the vague, conclusory allegations that fail to make out a cognizable claim.

### III. Claims Resolved by Summary Judgment

The district court denied dismissal on the pleadings with respect to two claims: retaliation by taking certain legal and personal items in response to Mr. Boles' threat to sue the defendants over the aborted eye surgery transport, and the claimed interference with his ability to file grievances. The remaining defendants moved for and were granted a summary judgment on those claims. We review a district court's grant of summary judgment de novo, applying the same standard as the district court. Morris v. City of Colo. Springs, 666 F.3d 654, 660 (10th Cir. 2012) (brackets in original) (internal quotation marks omitted). "[S]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(a)). "In conducting the analysis, we view all facts and evidence in the light most favorable to the party opposing summary judgment." Id. (brackets omitted) (internal quotation marks omitted). However, "[f]or dispositive issues on which the plaintiff will bear the burden of proof at trial, he must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." Cardoso v.

-16-

Calbone, 490 F.3d 1194, 1197 (10th Cir. 2007) (internal quotation marks omitted).

## A.    Retaliation

Mr. Boles claims that defendants Peck, Newth and Abney retaliated against him by searching his cell and confiscating certain items (damaging some items in the process) in retaliation for his threat to sue them because he had not been transported for his eye surgery as scheduled.   It is an established rule that an inmate must prove that "but for" the alleged retaliatory motive, the incident to which he refers would not have taken place.  Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998).

Mr. Boles' "proof" that these defendants retaliated consists solely of his own statement that he threatened a lawsuit, plus the temporal proximity of that threat to the actual search of his cell.  (As indicated above, all of these incidents took place within a very short span of time on December 18, 2008.)

However, as noted by the magistrate judge in response to proof submitted by the defendants, the search of Mr. Boles' cell was required by prison regulations related to absences.  AR 850-06 IV. F. provides, in part:  "When an offender is temporarily off grounds (e.g., out to court, infirmary, Colorado Mental Health Institute in Pueblo) the property must be inventoried, secured, and stored." R. Vol. 1 at 252 (emphasis added).  During that process, it had to become apparent to the defendants that Mr. Boles was storing property in his cell in

excess of the five-cubic-feet limit.  See AR 850-06 III. K., R. Vol. 1 at 248.  And,

it is immaterial that the cell search occurred after the medical trip was canceled,

since a closer inspection of Mr. Boles' cell was both consistent and congruent

with the required attention it received in connection with his expected transport

out of the facility.  That inspection is described in documentation submitted by

the State.  Ex. B to Defs.' Mot. for Summ. J., R. Vol. 1 at 261.  Furthermore, as

the magistrate judge found from the evidence submitted, the "[d]efendants have

shown that the CDOC undertook efforts to get plaintiff into compliance with

property limitations long before his scheduled medical appointment, and such

efforts continued well into 2009."  Recommendation at 10, R. Vol. 1 at 328.

Accordingly, the magistrate judge found that Mr. Boles "made no showing that

but for a desire to retaliate, excess property would not have been confiscated and

disposed of in accordance with the AR.  Therefore, summary judgment should

enter for the defendants on this claim."  Id.  The district court adopted that

recommendation and entered summary judgment on the claim.  We conclude that

the district court did not err in that judgment.

**B.      Processing of Grievances**

Mr. Boles contends that defendant Humphrey "deliberately fumbled

grievance processing" and that starting in May 2008 he refused to process

grievances for Mr. Boles.  This claim was decided against Mr. Boles on evidence

submitted by the State that Mr. Boles had abused the grievance processing system to the point that restrictions were imposed pursuant to AR 850-04 IV. C.

In particular, Mr. Boles was warned on July 18, 2008, that since he had filed 96 frivolous grievances within a 180-day period, he could only file one grievance per month for the next two months, as provided by the regulations. Thereafter, the evidence shows that by December 2, 2008, Mr. Boles had filed an additional 28 grievances in a 60-day period and, accordingly, was further restricted to one grievance per month for a period of six months. Recommendation at 11-12, Exs. I & J to Defs.' Mot. for Summ. J., R. Vol. 1 at 291-292.

The magistrate judge further found that because of Mr. Boles' abuse of the grievance system, his access to that procedure was appropriately restricted. There is no evidence that access was completely barred. The court then discussed the institutional justification for restricting voluminous filings of frivolous grievances and concluded that there was no merit in Mr. Boles' claim on this subject. Accordingly, the magistrate judge recommended that summary judgment in favor of defendant Humphrey should be entered on that issue, and the district court agreed. We do, as well.

## IV.  Miscellaneous Matters

The district court ruled against Mr. Boles with respect to a series of interlocutory motions.  Upon review of the record, we find no abuse of the district court's rulings on those motions.  Additionally, we have not addressed a number of inconsequential allegations made by Mr. Boles in his complaint—essentially roads leading to no destinations—including the allegations of "threats," "attempts," "requests," and similar matters.  We agree with the magistrate judge and the district court in their dispositions of these matters, as well as other allegations which may not have been directly addressed herein.

## V.  Conclusion

For the reasons stated above, and substantially for the reasons stated by the magistrate judge, as modified by the district court, we AFFIRM the rulings and the judgment of the district court dismissing, without prejudice, all but two claims raised by Mr. Boles in his complaint, and we AFFIRM the district court's summary judgment as to the two remaining claims.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge