**F I L E D**
United States Court of Appeals
Tenth Circuit

MAR 14 1997

**PATRICK FISHER**
**Clerk**

**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

RICKKE L. GREEN, also known as )
Rickke Leon Green, )
                                         )
          Plaintiff-Appellant, )
                                           )
v. ) No. 95-7075
                                           )
CHARLIE BRANSON, Sergeant, OSP; )
PATRICK MCCOY, Correctional Officer I, )
OSP; DON CUNNINGHAM, Sergeant, OSP; )
DENNIS BRANCH, Lieutenant, OSP; DAN )
REYNOLDS, Warden, OSP; MILTON VOGT, )
Dr., Medical Doctor, OSP; J. ROBERT DILLE, )
Medical Director, DOC, )
                                           )
          Defendants-Appellees. )

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. 93-592-B)

---

Submitted on the briefs:

Rickke L. Green, Plaintiff-Appellant, Pro Se; Louis W. Bullock, Patricia W. Bullock, and Michele T. Gehres of Bullock & Bullock, Tulsa, Oklahoma, for Plaintiff-Appellant.

W. A. Drew Edmondson, Attorney General of Oklahoma, Wellon B. Poe, Assistant Attorney General, and Charles K. Babb, Assistant Attorney General, Oklahoma City, Oklahoma, for Defendants-Appellees.

---

Before **PORFILIO, HOLLOWAY,** and **BRISCOE**, Circuit Judges.

―――――――――

**HOLLOWAY**, Circuit Judge.

―――――――――

Plaintiff-appellant Rickke L. Green appeals from the district court's grant of summary judgment against him on his 42 U.S.C. § 1983 claims for damages, declaratory and injunctive relief against the warden, physicians and guards employed at the Oklahoma State Penitentiary for an alleged prison beating and wrongful medical treatment of him in 1993. He also appeals the district court's denial of his motion for a Fed. R. Civ. P. 35 medical examination and his motion for recusal of the magistrate judge who recommended findings and a disposition in this case. We affirm in part, reverse in part and remand.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

**I**

During the events in question, Green was an inmate in the Oklahoma State Penitentiary at McAlester, Oklahoma. Some time during the morning of June 2, 1993, a fight broke out between Green and several prison guards while he was being escorted from the

yard to the cell block. App. at Ex. 3 (verified complaint at 2). The cause of the fight is in dispute. According to Green, he was seeking legal information from another inmate when Sgt. Charlie Branson, a prison guard, became impatient without justification and struck him across the back with a nightstick. Id. According to Branson, however, Green precipitated the altercation by hitting him above the left eye with handcuffs and falling on top of him. App. at Ex. 24 (affidavit of C.R. Branson).

Green claims that Officer Patrick McCoy and Sgt. Don Cunningham, two other prison guards, then ran over and that the three guards kicked, stomped, and punched him, twisted his knee, and struck him with the sticks. He claims that Lt. Dennis Branch, a supervisor, ran over and told the other three to stop the beating. However, Branch and the other guards dragged him by his handcuffs to his cell. App. at Ex. 3 (verified complaint at 3-4). The guards dispute Green's version of the facts and assert that they merely used the minimum amount of force necessary to subdue Green after he attacked Branson. App. at Ex. 24 (affidavits of Branson, Cunningham, and McCoy).

Once in his cell, Green asked for medical attention. He alleges that Warden Dan Reynolds was aware that he had been beaten but took no action. App. at Ex. 3. He also claims that he was beaten so severely he could not lie down on a stretcher and had to walk, one painful step at a time, until a wheelchair was brought for him. Id.

Dr. Milton Vogt was a prison physician who treated Green. According to Green, Dr. Vogt refused to treat his injuries and falsified medical documents to help cover up the

3

beating. Although Vogt sent Green to be x-rayed and examined, Green claims he was never examined. Id. Vogt, on the other hand, claims that Green was not seriously injured. App. at Ex. 24 (affidavit of Dr. Vogt).

Subsequent to these alleged injuries and constitutional violations, Green was transferred to federal custody and we are now advised he has been released from prison and is free. Brief of Appellant Rickke L. Green filed September 4, 1996, at 9; Supplemental Brief of Appellees filed October 17, 1996, at 3.

## II

First, we address the issue of mootness. Since he has been transferred from state custody to federal custody and has been released, Green concedes that his claim for injunctive relief against state employees is moot. However, he argues that he is still entitled to proceed on his declaratory relief claim because he has a live controversy relating to his claim for damages for past injury. Defendants argue that since Green would have to prove a deprivation of his civil rights to obtain damages, the declaratory relief action is unnecessary.

In Cox v. Phelps Dodge Corp., 43 F.3d 1345 (10th Cir. 1994), this court succinctly outlined the mootness inquiry applicable to claims for injunctive and declaratory relief:

> Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot--i.e. where the controversy is no longer live and ongoing. Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990). The touchstone of the mootness inquiry is whether the controversy continues to "touch[ ] the legal relations of parties having adverse

4

legal interests" in the outcome of the case. <u>DeFunis v. Odegaard</u>, 416 U.S. 312, 317 (1974) (per curiam) (quoting <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 240-41 (1937)). This "legal interest" must be more than simply the satisfaction of a declaration that a person was wronged. <u>Ashcroft v. Mattis</u>, 431 U.S. 171, 172-73 (1977) (per curiam) (holding that a claim for declaratory relief is moot when no "present right" is involved and the primary interest is the emotional satisfaction from a favorable ruling).

It is well established that what makes a declaratory judgment action "a proper judicial resolution of a 'case or controversy' rather than an advisory opinion--is [ ] the settling of some dispute which affects the behavior of the defendant toward the plaintiff." <u>Hewitt v. Helms</u>, 482 U.S. 755, 761 (1987); <u>see also</u> <u>Rhodes v. Stewart</u>, 488 U.S. 1, 4 (1988) (per curiam) (explaining that as the plaintiffs are no longer in prison, their case against prison officials is moot). Hence, this court has explained that a "plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured [by the defendant] in the future." <u>Facio v. Jones</u>, 929 F.2d 541, 544 (10th Cir.1991).

<u>Id.</u> at 1348. We are mindful of <u>F.E.R. v. Valdez</u>, 58 F.3d 1530, 1533 (10th Cir. 1995), in which we stated that a declaratory relief claim was not moot where it required "the court to determine whether a past violation occurred." However, considering both <u>Valdez</u> and <u>Cox</u>, and the fact that here declaratory relief would be superfluous in light of the damages claim, we are of the view that <u>Cox</u> is the case more applicable to the facts of this case.

Applying these principles to the case at bar, Green's claims for declaratory and injunctive relief are moot. Since he is no longer a prisoner within the control of the ODC, the entry of a declaratory judgment in Green's favor would amount to nothing more than a declaration that he was wronged, and would have no effect on the defendants' behavior towards him. <u>See</u> <u>Lavado v. Keohane</u>, 992 F.2d 601, 605 (6th Cir. 1993) (inmate's suit for declaratory judgment as to whether correctional officers violated his constitutional rights by

5

opening his privileged mail outside his presence was rendered moot by inmate's release from prison); Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir.1985) (prisoner's claims for injunctive and declaratory relief concerning prison conditions were moot where prisoner had been moved to another prison unit); McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir.1984) (holding that a prisoner's transfer to a different jail moots his claim for declaratory and injunctive relief even when prisoner argues that "there is no assurance that he will not be returned to the [first] jail"); Inmates v. Owens, 561 F.2d 560, 562 (4th Cir. 1977) (when a prisoner is released from prison, there is no longer a substantial controversy between the former inmate and prison officials of sufficient immediacy and reality to warrant the issuance of either injunctive or declaratory relief). Likewise, the entry of injunctive relief in Green's favor would have no effect on the defendants' behavior. See White v. State, 82 F.3d 364, 366 (10th Cir. 1996) (holding that inmate plaintiff's claims for injunctive relief were mooted by his release from incarceration). In contrast, Green's claims for damages would remain viable because a judgment for damages in his favor would alter the defendants' behavior by forcing them to pay an amount of money they otherwise would not have paid. See Farrar v. Hobby, 506 U.S. 103, 112-13 (1992).

### III

Next, we turn to the merits of Green's claims. His complaint filed August 11, 1993, alleged deprivation of his civil rights based on the use of excessive force by Branson, Cunningham, McCoy and Branch, deliberate indifference and failure to supervise by Warden

6

Reynolds in connection with the excessive force claim, and deliberate indifference to serious medical needs by Dr. Vogt and Dr. Dille.

A

We begin with the excessive force claim. A prison guard's use of force is not a violation of the Eighth Amendment if it is only "applied in a good faith effort to maintain or restore discipline," as opposed to being applied "maliciously or sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) (Friendly, J.)). In Albers, the Court indicated that review of a claim of the use of excessive force in a prison is to be deferential to the prison, and "that neither the judge nor jury [may] freely substitute their judgment for that of officials who have made a considered choice." Id. at 322:

> Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

Id.

Viewing the evidence in the light most favorable to Green as we must in reviewing this summary judgment, Bingaman v. Kansas City Power & Light Co., 1 F.3d 976, 980 (10th Cir. 1993), a rational jury could find that Branson, Cunningham, McCoy, and Branch inflicted serious injury on him wantonly. The record contains ample evidence that, if believed by the trier of fact, would show that Green did not provoke the use of force. Lonnie Parks, another inmate, states in his affidavit:

7

Sgt. Branson then ran up behind GREEN and shoved GREEN to the ground. Sgt. Branson then leaped on GREEN and started beating GREEN insanely. Cunningham and McCoy jumped on GREEN too. Together, they beat, stomped, kicked, and struck GREEN in his face, stomach, back, and leg areas with their fist, feet, and the blackstick, as GREEN laid helpless in handcuffs and leg-irons. I personally saw Cunningham twisting GREEN's feet and Branson striking GREEN with the blackstick. I also aver that I saw Lt. Branch race to the yard yelling "Stop it! Stop it!", over and over. Lt. Branch saw his officers beating GREEN. I aver that I then saw the officers pick GREEN up by his handcuffs and leg-irons and drag him away from the yard area. . . .

App. at Ex. 39, Ex. 1 at 2-3 (affidavit of Parks).

Parks also states in his affidavit that Green did not provoke the attack, id., and that "I personally saw Sgt. Branson, and Sgt. Branson did not have an injury to the forehead nor was he bleeding from the forehead." Id. This observation is corroborated by Rucker, another inmate. Id. (affidavit of Stacy Rucker) ("I saw Sgt. Branson and can personally testify that there was no gash or cut over his eye."); see also id. (affidavit of Jose Rideout) (same). These affidavits support Green's account of the incident, which is set forth in his verified complaint,[1] and they contradict the accounts of the guards, who all allege that Green struck Branson and caused a cut above his eye. See App. at Ex. 24 (affidavits of Branson, Cunningham, and McCoy).

Whether or not Green provoked the incident is a material fact since that is the basis which the guards relied on in using force to subdue Green. The alleged excessive force claim

---

[1]As Green's complaint has been sworn to under penalty of perjury, we have treated it as an affidavit. See Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991).

before us must be judged under the standard of the Eighth Amendment. The parameters for the standard were discussed in Whitley v. Albers, 475 U.S. at 320-21:

> Where a prison security measure is undertaken to resolve a disturbance, such as occurred in this case, that indisputably poses significant risks to the safety of inmates and prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Johnson v. Glick, 481 F.2d 1028, 1033 (CA2) (Friendly, J.), cert. denied sub nom John v. Johnson, 414 U.S. 1033 (1973). As the District Judge correctly perceived, "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted," 481 F.2d, at 1033, are relevant to that ultimate determination.

Id. at 320-21.

Albers had involved the shooting of an Oregon prisoner during a riot. However, the standard pronounced there was applied in Hudson v. McMillian, 503 U.S. 1 (1992), where a prisoner alleged that his Eighth Amendment rights were violated by a beating he received from two correctional officers -- circumstances similar to those alleged here by Green. In Hudson the Court applied principles from Albers, inter alia, holding:

> In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and "any efforts made to temper the severity of a forceful response." Ibid. The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it.

503 U.S. at 7.

9

We are convinced that in light of the showing made by Green in opposition to the summary judgment motion of defendants, substantial factual questions were raised. The magistrate judge resolved the factual disputes about the incident and alleged injuries by relying substantially on the factual determinations made in the "Special Report" prepared by the Department of Corrections in accordance with Martinez v. Aaron, 570 F.2d 317, 319-20 (10th Cir. 1978) (en banc) (per curiam), and other cases to the same effect.[2] Then the order of the district judge granting summary judgment for defendants affirmed and adopted the findings and recommendation of the magistrate judge, saying they were supported by the record. Thus, the magistrate's and the district judge's rulings on the factual disputes actually rested significantly on the Martinez report as well as the disputed affidavits of the defendants.

We have held that a "Martinez report is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991) (emphasis added). Here Green's complaint was accompanied by a statement by Green made under penalty of perjury, 28 U.S.C. § 1746, and thus may be treated as an affidavit. Hall, 935 F.2d at at 1111. Green's verified statements and the affidavits submitted supporting Green's position present substantial factual disputes on the excessive force claim.

---

[2]Martinez approved a district court's order requiring a state prison to produce a written report summarizing its findings in prison litigation.

In sum, we hold that the evidentiary showings from both sides before us present clear conflicts in the evidence on the Eighth Amendment excessive force claim against defendants Branson, Cunningham, McCoy, and Branch, the guards involved. We therefore must reverse the grant of summary judgment on Green's excessive force claim against the guards and remand for resolution of the factual disputes by the trier of fact.

**B**

Next we address Green's claim that Reynolds, the warden of the prison, should be held liable for Green's alleged mistreatment and deliberate lack of medical care following the beating incident.[3] Liability of a supervisor under § 1983 must be predicated on the supervisor's deliberate indifference, rather than mere negligence. Langley v. Adams County, Colo., 987 F.2d 1473, 1481 (10th Cir. 1993). To be guilty of "deliberate indifference, the defendant must know he is "creating a substantial risk of bodily harm." Billman v. Indiana Deptartment of Corrections, et al., 56 F.3d 785, 788 (7th Cir. 1995). To establish a supervisor's liability under § 1983 Green must show that "an 'affirmative link' exists between the [constitutional] deprivation and either the supervisor's 'personal participation, his exercise of control or direction, or his failure to supervise.'" Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1988).

---

[3]The sworn statements of Green in paragraphs 4, 62 and 63 of the Plaintiff's Response and Memorandum in Opposition to Defendants' Motion to Dismiss, etc., App. Item 46, make a showing that Warden Reynolds was told of the attack on Green and that he limited his review of the facts to the guards' incident reports.

11

Green's verified complaint, page 6, states that when Green had been returned to his cell after the beating, Green observed and heard prisoners tell Warden Reynolds "about the ruthless and vicious assault" and that Green had been beaten so badly he could not talk, that Green thought his leg and ribs were broken, and that Reynolds needed to go up and see Green. The complaint stated that Reynolds did not come to Green's cell and did nothing; that had Warden Reynolds, being duly aware of the assaultive nature of the guards and the denial of medical care by the staff, shown "anything but a lackadaisical attitude and/or reaction to the instant incident" Green would have received proper medical care and documentation of his injuries; that Reynolds displayed "deliberate indifference" to the badly brutalized prisoner under his care and custody. The verified complaint said further that about fifteen minutes later, the prison staff said Green was going to the infirmary, that he was unable to lie down on the stretcher, and was finally taken by wheelchair to the infirmary.

As with respect to the guards, we likewise are convinced that the district court erred in granting summary judgment in favor of the warden on the claim against him in connection with the alleged deliberate indifference to Green's medical needs. We feel there was a showing of the warden's alleged deliberate indifference and of an affirmative link between the constitutional deprivation and the warden's improper control and failure to supervise. See Langley v. Adams County, Colorado, 987 F.2d 1481; and Meade v. Grubbs, 841 F.2d at 1527.

12

## C

Finally, we consider Green's claim against doctors Vogt and Dille for deliberate indifference to medical needs. A medical staff's "deliberate indifference to serious medical needs of prisoners" constitutes a violation of the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97 (1976). However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Id. at 106. Such medical malpractice does not constitute deliberate indifference. Id. at 106. Nor does disagreement in medical judgment. Id. at 107.

As we turn to Green's averments we must remember that his complaint appears to have been prepared by him pro se. In such circumstances, "the court should construe his pleadings liberally and hold the pleadings to a less stringent standard than formal pleadings drafted by lawyers." Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996). Green alleges that he was brought into the infirmary with numerous gashes and bruises, that he was screaming in agony, and that he could not lie down. He claims that Dr. Vogt refused to treat him. Although there is evidence to support Vogt's claim that Green exhibited no severe injuries, see App. at Ex. 39 (affidavit of Milton Vogt, examination notes), Green's own testimony, if believed, would show that Dr. Vogt failed to take any action with regard to the injuries. Green alleges in his verified complaint:

> Defendant Vogt, seeing clear injuries, clear swelling, clear bleeding, clear indications of possible internal injuries, etc. stated nothing was wrong with plaintiff . . . . Defendant Vogt, notwithstanding the fact that plaintiff could have died from such injuries or could sustain permanent impairment or

13

disability from same, did immediately and promptly put a medical coverup and conspiracy in motion.

App. at Ex. 3. The gist of the alleged cover-up was that Vogt wrote in the medical records that he was sending Green to the Emergency Room of the McAlester Regional Hospital for examination and x-rays, but that Dr. Vogt surreptitiously directed the persons transporting Green to take him for x-rays only and not for an examination. Id.

Green states in his verified complaint that he suffered the following injuries as a result of the beating: (1) "2-gashes to the back of the head near and around the brain area, bleeding and in need of stitches"; (2) "scars and swelling on right side of face"; (3) "swollen left eye"; (4) "left knee swollen, painful, unable to apply real pressure to it; bone protruding out same"; (5) "back injury, excruciating pain . . . unable to lie on back at all"; (6) "stomach and side injuries, excruciating pain, blood was coming up first two days, dark blood came up for about a month and a half; could not eat solid food." App. at Ex. 3 at 8.

We are persuaded that a showing of deliberate refusal to provide medical attention, as opposed to a particular course of treatment, coupled with falsification of medical records may give rise to an Eighth Amendment violation and is cognizable under 42 U.S.C. § 1983. See Parnisi v. Colorado State Hospital, 992 F.2d 1223, 1993 WL 118860, at *2 (10th Cir., Apr. 15, 1993) (unpublished decision) (reversing a dismissal of an Eighth Amendment claim

14

based on alleged refusal to treat brain and heart conditions with allegations of falsification of medical data).[4] In Parnisi we held:

> In the instant case, the appellant clearly alleges that the appellees have acted with deliberate indifference. Not only does he claim that the appellees have purposefully refused to treat his brain and heart condition, but he also claims that they have sought to cover-up their refusal to treat him by falsifying his medical records.

Id. at 2 (emphasis added). We feel that Green's evidentiary showing, including alleged falsification of medical data, is within the parameters of Eighth Amendment "deliberate indifference," involving plainly "deliberate" action and inaction of a culpable nature. Therefore, the district court erred in granting summary judgment in favor of Dr. Vogt on Green's deliberate indifference claim.

With respect to J. Robert Dille, the medical director, however, we affirm the entry of summary judgment against Green. The theory of liability against Dr. Dille is premised essentially on his duties as the supervisor of Dr. Vogt and Green's disagreement with Dr. Dille's denials that Green required medical care or was denied such care. We are convinced that Dr. Dille was not shown to be liable under § 1983. "A supervisor is not liable under section 1983 unless an 'affirmative link' exists between the [constitutional] deprivation and either the supervisor's 'personal participation, his exercise of control or direction, or his

---

[4]See 10th Cir. R. 36.3 ("[A]n unpublished decision may be cited if it has persuasive value with respect to a material issue that has not been addressed in a published opinion and it would assist the court in its disposition").

15

failure to supervise.'" Meade, 841 F.2d at 1527. The evidentiary showing as to Dr. Dille did not rise to the level required to show the medical director's liability.

**IV**

Next, we consider the denial of Green's Rule 35 motion for a medical examination. We review this ruling for abuse of discretion. Coca Cola Bottling Co. v. Negron Torres, 255 F.2d 149, 153 (1st Cir. 1958).

Fed. R. Civ. P. 35(a) states as follows:

**(a) Order for Examination.** When the mental or physical condition (including the blood group) of a party or of a person in custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in the party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

Here the district court's order ruling on the matter found that Green had moved for a Rule 35 examination for medical treatment purposes, which was improper. App. Item 57 at 1-2. See Schlagenhauf v. Holder, 379 U.S. 104, 118-19 (1964) (stating application under Rule 35 must show each condition for which examination is sought is genuinely in controversy). The district court's ruling is supported by Green's Rule 35 motion, which reveals that Green's primary purpose was to obtain medical care and to complain of deliberate indifference to his serious medical needs, the demonstration of disputes and controversies

16

over his medical condition appearing to be secondary. <u>See</u> App. at Ex. 5, ¶¶ 5 and 6. Therefore the district court's ruling on this issue was not an abuse of discretion.

## V

Green further contends that the district court failed to conduct a <u>de novo</u> review of the magistrate judge's report, requiring reversal. We disagree. We assume that the district court performed its review function properly in the absence of evidence to the contrary. <u>Longmire v. Guste</u>, 921 F.2d 620, 623 (5th Cir.1991). Green has failed to show that the district court did not conduct a <u>de novo</u> review. Therefore, we will not reverse the judgment on this basis.

## VI

Further, Green contends that the district court erred in not ordering recusal of the magistrate judge. To prevail on a motion under 28 U.S.C. § 144 to recuse a judge, the litigant must file a timely and sufficient affidavit establishing that the judge has a personal bias or prejudice. Similarly, to obtain disqualification under 28 U.S.C. § 455, a movant must show that a reasonable person, knowing all the circumstances, would harbor doubts about the judge's impartiality, <u>Chitimacha Tribe of Louisiana v. Laws Co.</u>, 690 F.2d 1157, 1165 (5th Cir. 1982), and rumor, speculations, opinions and the like do not suffice. <u>United States v. Cooley</u>, 1 F.3d 985, 993 (10th Cir. 1993).

Green's attempt to disqualify Magistrate Judge Payne was neither timely nor sufficient. The record indicates that on September 26, 1994, Magistrate Judge Payne entered

17

his "Finding and Recommendation." Green did not move to recuse until November 1, 1994, and provides no explanation for why he waited so long to move for disqualification. Nor has he provided any proper showing of personal bias or prejudice. In his motion before the district court (which he references in his appellate brief), he states that "Magistrate Judge Payne is therefore using his judicial office to assist Defendants in winning a multi-million dollar civil rights lawsuit through pure and open fraud." App. Item 55 at 2. In essence, Green complains of rulings against him by the magistrate. However, adverse rulings "cannot in themselves form the appropriate grounds for disqualification." Green v. Dorrell, 969 F.2d 915, 919 (10th Cir. 1992).

Therefore, the district court properly rejected Green's motion for the recusal of Magistrate Judge Payne.

## VII

The court appointed counsel for Green and ordered supplemental briefing on the retroactivity and possible effect of the Prison Litigation Reform Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321-66. However, we have been advised that Green was transferred from state custody to federal custody and that he has been released from custody and is free from restraint of incarceration. Brief of Appellant Rickke L. Green filed September 4, 1996, at 9. In that brief, Green argues that the Act may not be given retroactive effect and should not be applied in this case. However, defendants in their supplemental brief on this statute have not sought the application of any of the provisions of the Act in this case.

18

In light of these circumstances, we feel that the issues involving the Act are not ripe for adjudication, particularly as Green raises a host of constitutional challenges to the Act. See United Public Workers v. Mitchell, 330 U.S. 75, 90 n.22 (1947) (noting the Court's practice "not . . . to decide any constitutional question in advance of the necessity for its decision . . . or to decide any constitutional question except with reference to the particular facts to which it is to be applied"). Therefore, as a reflection of "prudential considerations defining and limiting the role of courts," see Warth v. Seldin, 422 U.S. 490, 517-18 (1975), we feel we need not and should not address any issue under the Act in deciding this appeal.

## VIII

Accordingly, we **AFFIRM** the district court's denial of Green's Rule 35 motion, the denial of his motion to recuse Magistrate Judge Payne, and the entry of summary judgment in favor of Dr. Dille on the Eighth Amendment issues. We **DISMISS** the declaratory judgment and injunctive relief claims as moot. We **REVERSE** the entry of summary judgment in favor of Officers Branson, McCoy, Cunningham and Branch, Warden Reynolds and Dr. Vogt on the Eighth Amendment claims and **REMAND** for further proceedings.