

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-24-2008

# Policastro v. Kontogiannis

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1471

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Policastro v. Kontogiannis" (2008). *2008 Decisions.* Paper 1715.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1715

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-1471

ANDREW POLICASTRO,
                              Appellant

v.

DR. THEODORA P. KONTOGIANNIS,
Principal Tenafly High School;
TENAFLY BOARD OF EDUCATION

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 04-cv-1219
(Honorable Joel A. Pisano)

Argued January 23, 2007

Before:  SCIRICA, *Chief Judge*, FUENTES and CHAGARES, *Circuit Judges*

(Filed: January 24, 2008)

ANDREW POLICASTRO (ARGUED)
        Appellant, Pro Se

ARTHUR R. THIBAULT, JR., ESQUIRE (ARGUED)
Apruzzese, McDermott, Mastro & Murphy
25 Independence Boulevard
P.O. Box 112
Liberty Corner, New Jersey 07938
        Attorney for Appellees

JEANNE LoCICERO, ESQUIRE (ARGUED)
American Civil Liberties Union of New Jersey Foundation
89 Market Street, 7th Floor
P.O. Box 32159
Newark, New Jersey 07102
        Attorney for Amici Curiae-Appellants,
        American Civil Liberties Union of New Jersey Foundation and
        The Student Press Law Center

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

Appellant Andrew Policastro, a teacher at Tenafly High School, sued the school's principal, Dr. Theodora Kontogiannis, and the Tenafly Board of Education for violation of his First Amendment right to freedom of speech. Following a bench trial, the District Court dismissed Policastro's claims and entered judgment in favor of both Kontogiannis and the school board. We will affirm the judgment in part and dismiss in part.[1]

**I.**

Policastro is a science teacher at Tenafly High School. On March 13, 2002, at 8:15 a.m., a memorandum was distributed to all Tenafly High School staff members through the teachers' school-provided mailboxes. The memorandum involved a labor dispute between teachers and their union over negotiations of a proposed collective

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343, and we have appellate jurisdiction under 28 U.S.C. § 1291.

bargaining contract. A ratification vote on the proposal was scheduled that same afternoon. Policastro was one of thirteen teachers who signed the memorandum.

In the words of the District Court, the memorandum was "plain vanilla," containing no vulgarities or obscenities. Yet the memorandum prompted complaints to Dr. Theodora Kontogiannis, principal of Tenafly High School. One complaint reported a "commotion in the library" over the memorandum, and another reported arguments among teachers. Kontogiannis, deciding the memorandum was unacceptably disrupting school activities, removed all remaining copies from the teachers' mailboxes. Immediately thereafter, a teacher reinserted copies in the mailboxes. Kontogiannis again ordered the memorandum removed and the mailroom door locked for the remainder of the school day.

Based on these events, Policastro filed suit against Kontogiannis and the school board. He alleged that Kontogiannis's removal of the memorandum violated his First Amendment right to free speech, and he challenged as unconstitutional a Tenafly School Board policy restricting the use of teacher mailboxes. Defendants filed a motion to dismiss for failure to state a claim. The District Court granted the motion, and Policastro appealed. We vacated the dismissal and remanded to the District Court for further proceedings. *See Policastro v. Kontogiannis*, No. 04-2883, 2005 WL 1005131 (3d Cir. Jan. 12, 2005).

The District Court conducted a bench trial at which Policastro appeared *pro se*. At the conclusion of both sides' testimony, the District Court adjudicated Policastro's claims and found in favor of both Kontogiannis and the school board and against Policastro.[2] This appeal followed.

## II.

### A.

The Tenafly School Board has a written policy on using teacher mailboxes ("Mailbox Policy"), which provides:

> Mailboxes are the property of the Tenafly Board of Education and should be used for school business. Any staff member wishing to distribute flyers/announcements etc. (via the mailboxes) must have prior approval from the principal or vice-principal.

Policastro claims this policy is unconstitutional on its face. The District Court characterized this claim as an overbreadth challenge, stating it would try the issue of whether the policy "impermissibly extends [to] . . . speech that cannot be constitutionally restricted." (Tr. at 5:20-22). Policastro did not object.[3]

---

[2] Keen to the need for exigency in this matter, the District Court issued an oral decision from the bench. The judgment employed the term "dismissal," but on review of the transcript it appears plain the court was adjudicating Policastro's claims. Any confusion in wording may have been due to our prior decision vacating the original dismissal for failure to state a claim and remanding for fact finding. But the record reveals Policastro's claims were adjudicated following a bench trial that included testimony from all relevant parties and witnesses.

[3] The *amici curiae* contend the Mailbox Policy is also unconstitutionally vague. But there was no testimony during the bench trial about the risk of discriminatory application

(continued...)

A regulation is unconstitutionally overbroad where there is "'a likelihood that [it]s very existence will inhibit free expression' by 'inhibiting the speech of third parties who are not before the Court.'" *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 214 (3d Cir. 2001) (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 799 (1984)). "[A]voidance of this chilling effect is at the heart of the overbreadth doctrine." *Gasparinetti v. Kerr*, 568 F.2d 311, 317 (3d Cir. 1977) (citation omitted). But a regulation's inhibiting nature must be "'not only real but substantial in relation to [it]s plainly legitimate sweep'" to be held unconstitutional. *Saxe*, 240 F.3d at 214 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)). "Because the overbreadth doctrine is 'strong medicine,' it is to be used sparingly, where the demonstrated overbreadth is considerable." *Kreimer*, 958 F.2d at 1265 (quoting *New York v. Ferber*, 458 U.S. 747, 769 (1982)) (some internal quotation marks omitted).

Here, the District Court held the Mailbox Policy had no actual or potential chilling effect. The court found that Tenafly teachers, including Policastro, had distributed personal documents through the teachers' mailboxes both before and after the subject

---

[3](...continued)
of the Mailbox Policy or whether school officials were endowed with undue discretion under the policy. These questions would be central to a vagueness challenge. *See*, *e.g.*, *Kreimer v. Bureau of Police for Morristown*, 958 F.2d 1242, 1266 (3d Cir. 1992). Accordingly, we will only address overbreadth. *See Gass v. Virgin Islands Tel. Corp.*, 311 F.3d 237, 246 (3d Cir. 2002) ("[I]t is well established that failure to raise an issue in the district court constitutes a waiver of the argument. . . . We only depart from this rule when manifest injustice would result from a failure to consider a novel issue.") (citation and internal quotation marks omitted).

memorandum was confiscated. The court also found, and all parties agreed, that Tenafly High School administrators had never denied prior approval of a mass distribution, and that–with the exception of the subject memorandum here–nothing had ever been removed from the mailboxes. Furthermore, in terms of the Mailbox Policy's "legitimate sweep," the court credited Kontogiannis's testimony that the purpose of the policy was to ensure that the mailboxes did not become overstuffed to the point where documents involving school business would be missed or lost. Based on these facts, the court concluded that any inhibiting impact of the Mailbox Policy was insubstantial relative to its legitimate scope.

We agree that the record fails to show that the Mailbox Policy has had an actual or potential chilling effect on teacher speech. Policastro admits that "[s]ince the removal of the memo . . . use of the mailboxes by teachers for personal messages (memos, notes, cards, etc.) has continued as usual, without prior approval." Policastro Brief at 5. Accordingly, we will affirm the District Court's denial of Policastro's overbreadth challenge.

**B.**

Policastro also claims the Mailbox Policy is unconstitutional as it was applied to him. But Kontogiannis testified at trial that she removed the memorandum because of a disruption among the teachers that threatened to disrupt the school's program. There is no evidence in the record demonstrating the Mailbox Policy was the cause of the

6

memorandum's removal. Accordingly, Policastro has not shown he suffered any injury under the policy or that the policy has ever in fact been applied to him. We will affirm the District Court's denial of Policastro's "as applied" challenge to the Mailbox Policy.

## III.

Policastro also claims his First Amendment right to free speech was violated whether or not Kontogiannis removed the subject memorandum under the Mailbox Policy.[4] He did not seek damages. He seeks declaratory and injunctive relief only, which, for the reasons set forth below, are forms of relief we have no authority to provide on the facts here. Therefore, we will dismiss this claim as non-justiciable, because even if meritorious, we could not redress it.

To bring and maintain a lawsuit through adjudication, Policastro must have standing. *E.g.*, *Artway v. Attorney Gen. of N.J.*, 81 F.3d 1235, 1246 (3d Cir. 1996). "The three elements necessary to establish the irreducible constitutional minimum of standing are: (1) the plaintiff must have suffered an injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct

---

[4] Policastro's *pro se* complaint has been liberally construed to include a claim under 42 U.S.C. § 1983 that the school's actions in removing the memorandum infringed on his First Amendment right to free speech. *See Policastro v. Kontogiannis*, No. 04-2883, 2005 WL 1005131 (3d Cir. 2005). This claim is distinct from his "as applied" challenge to the Mailbox Policy, because he alleges his speech was unconstitutionally silenced by the school's actions even if those actions were motivated by something other than the Mailbox Policy.

7

complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (citing *United States v. Hayes*, 515 U.S. 737, 742-43 (1995)).

In our prior opinion vacating the District Court's dismissal for failure to state a claim, we acted without the benefit of fact-finding. Here, we have discovery and a trial record. On prior review, Policastro's standing was not in question. Policastro's *pro se* complaint, construed liberally, alleged Kontogiannis removed the offending memorandum from teacher mailboxes under the school's Mailbox Policy. Had this been proven, equitable relief might have been proper if the policy were unconstitutional, facially and/or as applied. But the trial testimony unequivocally shows the subject memorandum was removed because of the perceived disturbance it caused, not because of the Mailbox Policy. Because the school's action in removing the memorandum was an isolated occurrence wholly unrelated to the Mailbox Policy, the facts present no ongoing harm or controversy for us to remedy. Accordingly, whether or not Policastro had standing prior to remand, his claims are now moot.

A mootness inquiry asks whether a claimant's standing continues throughout the litigation. "A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Donovan ex. rel. Donovan v. Punxsutawney Area School Bd.*, 336 F.3d 211, 216 (3d Cir. 2003) (citation omitted). "The court's ability

8

to grant effective relief lies at the heart of the mootness doctrine." *Id.* "That is, if developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." *Id.*; *see also Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) ("The touchstone of the mootness inquiry is whether the controversy continues to touch the legal relations of parties having adverse legal interests in the outcome of the case.") (citation omitted). "The crucial question is whether 'granting a present determination of the issues offered . . . will have some effect in the real world.'" *Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1256 (10th Cir. 2004) (alterations in original) (citations omitted).

At this juncture, no available remedy would redress Policastro's suit. He has not sought damages.[5] Injunctive relief would be unavailable for Policastro at this time, and

___

[5] Policastro's suit would likely survive a justiciability challenge if he had sought damages. *See, e.g.*, *Boag v. MacDougall*, 454 U.S. 364 (1982) (holding the transfer to another prison did not moot a prisoner's claim for damages arising from placement in solitary confienement); *Donovan*, 336 F.3d at 218 (holding claims for damages and attorneys fees continued to present a live controversy even though claims for declaratory and injunctive relief were moot); *Jersey Cent. Power & Light Co. v. New Jersey*, 772 F.2d 35, 41 (3d Cir. 1985) ("[T]he availability of damages or other monetary relief almost always avoids mootness. . . ."); *Blau v. Fort Thomas Public School Dist.*, 401 F.3d 381, 387 (6th Cir. 2005) (noting the existence of a damages claim "ensures that [a] dispute is a live one over which Article III gives us continuing authority.") (multiple citations omitted). But Policastro chose not to assert a claim for damages. A request for damages will generally save a case from becoming moot when equitable relief no longer provides an effective remedy, but courts will not read a claim for damages into a complaint that contains no such request. *See Seven Words LLC v. Network Solutions*, 260 F.3d 1089,
(continued...)

9

declaratory relief would amount to no more than an advisory opinion regarding the "wrongfulness" of past conduct. *See, e.g., Green v. Branson*, 108 F.3d at 1299-1300 (10th Cir. 1997) ("[A party's] 'legal interest' must be more than simply the satisfaction of a declaration that a person was wronged.") (citing *Ashcroft v. Mattis*, 431 U.S. 755, 761 (1987)). The Supreme Court has consistently held "a federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (quotation omitted). The Court has provided further guidance on this point:

> "In all civil litigation, the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces–the payment of damages, or some specific performance, or the termination of some conduct. Redress is sought *through* the court, but *from* the defendant. This is no less true of a declaratory judgment suit than of any action. The real value of the judicial pronouncement–what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion–is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*."

*Rhodes v. Stewart*, 488 U.S. 1, 3-4 (1988) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)) (emphases in original).

Accordingly, where Policastro has not sought damages, and we are unable to afford him meaningful alternative relief, his claim that Kontogiannis's removal of the

---

[5](...continued)
1097 (9th Cir. 2001) (holding claims moot where appellant sought only injunctive and declaratory relief but failed to request damages).

subject memorandum from teacher mailboxes violated his First Amendment right to free speech is moot.[6]

## IV.

For the foregoing reasons, we will affirm the District Court's denial of Policastro's facial and as applied challenges to the school's Mailbox Policy. We will also dismiss as non-justiciable Policastro's claim that his First Amendment right to free speech was violated.

---

[6] We note that the "capable of repetition yet evading review" exception to mootness, *e.g.*, *Brody ex. rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1113–15 (3d Cir. 1992), does not apply here. "This extremely narrow exception to the mootness doctrine is applicable only where: 1) the challenged action is too short in duration to be fully litigated before the case will become moot; and 2) there is a reasonable expectation that the complaining party will be subjected to the same action again." *Donovan*, 336 F.3d at 217 (citing *Weinstein v. Bradford*, 423 U.S. 147 (1975) (per curiam)). The prospect of a similar memorandum being removed from teacher mailboxes under the facts here is too speculative to warrant invocation of this narrow exception. *See*, *e.g.*, *Preiser v. Newkirk*, 422 U.S. 395, 403 (1975) ("Any subjective fear [Plaintiff] might entertain of being again [subjected to] circumstances similar to those alleged in the complaint . . . is indeed remote and speculative and hardly casts [a] 'continuing and brooding presence' over him . . . .") (citation omitted). Even looking beyond the unique circumstances of the union negotiations at the heart this case, the record demonstrates, and Policastro himself asserts, that no other item–among the many hundreds of items inserted in teacher mailboxes–has been removed from teacher mailboxes, either prior to or subsequent to the removal of his memorandum. Moreover, because of email and other technologies, the teacher mailboxes no longer serve as the primary means of communication between the school and its teachers.