TYMKOVICH, Circuit Judge,
concurring.
I fully agree with the majority that the complaint sufficiently alleges former Sheriff Richardson violated clearly established law when he implemented the county court’s unconstitutional bail policy.[1] I write separately to further note the lack of clarity in the law of supervisory liability, and my view of how this may have been affected by the Supreme Court’s recent decision in Ashcroft v. Iqbal, — U.S. -, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).
Federal law provides that “[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.” 42 U.S.C. § 1983 (emphasis added). The phrase “causes to be subjected” suggests that liability exists for officials who did not directly violate constitutional rights, but, as the majority illustrates, the standard for demonstrating that a supervisory official has caused a violation is far from clear. A short review of pertinent case law illustrates the lack of clarity.
I.
As an initial matter, the Supreme Court has long held that municipalities are not liable for the constitutional torts of their employees merely on a respondeat superi- or basis. Monell v. Dep’t of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, municipalities are only liable for constitutional violations that they have directly caused. To prove that a municipality caused a violation of her constitutional rights, a plaintiff must show that an injury was caused by an “official municipal policy of some nature.” Id.
*1209 An official policy need not be explicitly codified — in some contexts, decisions of high-ranking officials, even with regard to isolated events, are rightly viewed as official policy and therefore subject the municipality to liability. See Pembaur v. Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). This concept of “official policy” is even flexible enough to include situations in which the potential for constitutional violations was so obvious that a municipality can be held liable for failing to adequately train its employees. See Canton v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). But it is essential to recall that in all these situations, liability is imposed “only where the municipality itself causes the constitutional violation at issue.” Id. at 385, 109 S.Ct. 1197 (citing Monell, 436 U.S. at 694-95, 98 S.Ct. 2018) (emphasis in original). These examples — official policy, decisions of high-ranking officials, and failure to adequately train employees — are not rightfully regarded as theories of liability but should instead be viewed as theories of causation.
As to supervisory liability, the added level of removal between the violation and the supervisor makes questions of causation even more difficult. The Supreme Court has yet to speak with much clarity on the theories of causation that could demonstrate a supervisory official’s liability for the constitutional violations carried out by a subordinate. Whether a supervisor has violated the plaintiffs rights is dependent on whether the subordinate violated the Constitution — the supervisor cannot be liable if there was no violation. See City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (“if the [employee] inflicted no constitutional injury on respondent, it is inconceivable that [the city] could be liable to respondent.”). And in some cases, the determination of whether a violation occurred turns on the subordinate’s state of mind.[2] What remains unclear is the state of mind that the supervisor must possess to be liable for causing such a violation.
As the majority points out, the Supreme Court recently muddied further these already cloudy waters. In Ashcroft v. Iqbal, — U.S.-, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Court reiterated the longstanding rule from Monell that “[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.” 129 S.Ct. at 1948. In doing so, the Court explained that in “a § 1983 suit or a Bivens action- — where masters do not answer for the torts of their servants — the *1210 term ‘supervisory liability’ is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.” Id. at 1949.
Iqbal involved a claim of invidious discrimination, in which a plaintiff must demonstrate that an official undertook “a course of action ‘because of,’ not merely ‘in spite of,’ [the action’s] adverse effects upon an identifiable group.” Id. In that context — where the intent to discriminate is an element of the constitutional violation— the Supreme Court rejected the proposition that supervisors can be held liable for mere “knowledge and acquiescence in their subordinates’ use of discriminatory criteria to make classification decisions.” Id. at 1949. To prevail against these supervisory officials, the plaintiff would have to demonstrate that they “purposefully adopted a policy of [discriminating against plaintiffs] because of them race, religion, or national origin.” Id. at 1952. That is, the plaintiffs must show that the supervisory officials themselves acted with an impermissible motive, not merely that they knew of their subordinates’ impermissible motives and did not put a stop to their actions. Since the plaintiffs in Iqbal failed to sufficiently allege discriminatory intent on the part of the supervisors, their claims against the supervisory officials failed.
The dissenters in Iqbal stated, perhaps hyperbolically, that the majority’s view “eliminatfed] ... supervisory liability entirely.” Id. at 1957 (Souter, J., dissenting ).[3]
Iqbal unfortunately did not provide a unified theory for the variety of supervisory liability cases we face. We do know supervisory liability under § 1983 is still only appropriate where the plaintiff can prove that the supervisor caused the violation. And in a case like Iqbal, where the constitutional violation requires discriminatory intent, a supervisor does not cause a violation unless he or she actually intended for his or her subordinates to invidiously discriminate. Mere knowledge and acquiescence of, or even “deliberate indifference” towards, the discriminatory actions of employees now appears insufficient to prove causation, and thereby prove liability.
Although the Supreme Court did not explicitly state it in this manner, the discriminatory intent of subordinates actually breaks the chain of causation if the supervisor did not also intend to discriminate. This analysis fits well with the Court’s precedent noting that “claims brought pursuant to § 1983 sound in tort,” and counseling therefore that § 1983 should be interpreted “in light of the ‘background of tort liability.’ ” Monterey v. Del Monte Dunes, 526 U.S. 687, 709, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999) (quoting Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)).
But Iqbal does not address constitutional violations that are based on a state of mind other than specific intent — for instance, a procedural due process violation, or an Eighth Amendment violation based on an official’s deliberate indifference. A *1211 supervisor is liable for these actions only when the supervisor can be fairly said to have caused the violation, but determining when this is the case can be tricky, to say the least.
At the most basic level of formulation, our law requires an “affirmative link” between the constitutional violation and “either the supervisor’s personal participation, his exercise of control or direction, or his failure to supervise.” Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1988) (quoting Specht v. Jensen, 832 F.2d 1516, 1524 (10th Cir.1987)) (internal quotation marks omitted). Ordinarily, “there must be cause in fact between the conduct complained of and the constitutional deprivation.” Snell v. Tunnell, 920 F.2d 673, 700 (10th Cir.1990). Applying this “cause in fact” reasoning to supervisory defendants, we concluded that the “requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.” Id.; see also Buck v. City of Albuquerque, 549 F.3d 1269, 1279-80 (10th Cir.2008).
At odds with the “set in motion” formulation, we also caution it is not enough to “merely show[] that a supervisor ‘should have known’ that a subordinate was violating someone’s constitutional rights.” Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir.1992). Instead, only a supervisor’s actual knowledge of his subordinates’ behavior will demonstrate the requisite “deliberate, intentional act by the supervisor to violate constitutional rights.” Id. Negligence — even gross negligence — is insufficient to prove that the supervisor caused a violation.
The exact method of demonstrating a causal link depends on the actions of the supervisor in relation to the subordinate that led to the violation. Supervisors sometimes directly order their subordinates to take an action, either in a specific case, or by establishing some sort of policy. They may also learn of conduct taken by their subordinates and acquiesce in it after the fact or simply ignore it. Some supervisors may never learn of the unconstitutional actions of their subordinates, not because their subordinates were successful in hiding their behavior, but because the supervisor was “willfully blind” or deliberately indifferent. And supervisors may have a responsibility, as do municipalities, to ensure that their subordinates are properly trained — failure to carry out this duty may in some cases result in a violation.
Just as there are various ways in which a supervisor can be said to have caused a violation, as outlined above, there are different levels of fault associated with these actions. We consider some of these actions to be blame-worthy enough that the supervisor should be liable. Our cases have suggested that a supervisor could be liable if he or she “established or utilized an unconstitutional policy or custom.” Meade, 841 F.2d at 1528. We have also stated, perhaps contradictorily, that supervisory liability under § 1983 “must be predicated on the supervisor’s deliberate indifference, rather than mere negligence.” Green v. Branson, 108 F.3d 1296, 1302 (10th Cir.1997). We have even suggested that, in some cases, supervisors could be liable for violations that resulted from recklessness — “a conscious acceptance of a known, serious risk” — because this “requires proof that the defendant focused upon the risk of unconstitutional conduct and deliberately assumed or acquiesced in such risk.” Woodward, 977 F.2d at 1399 n. 11 (emphasis in original).
In sum, our precedent has established, with varying levels of clarity, that a supervisor is only liable for violations that he caused, and that causation requires at *1212 least some degree of fault on the supervisor’s part. Exactly how this causation can be shown varies depending on the type of violation and the facts of the case.
II.
Iqbal holds that at least for some constitutional violations requiring specific intent, a supervisor cannot be liable for a subordinates’ violations unless the supervisor possessed that intent as well. Thus, in cases where an element of the constitutional violation by the subordinate is “discriminatory intent,” such as the racial discrimination claimed in Iqbal, the supervisor must share the state of mind. But in situations where the constitutional violation does not require specific intent, the supervisor “is only liable for his or her own misconduct.” Iqbal, 129 S.Ct. at 1949.
Following this logic, several theories of liability are possible. First, a supervisor may directly order a subordinate to violate the plaintiffs rights — for example, by deliberately creating a policy that denies the plaintiff due process, or utilizing an already-existing policy that has the same effect. See Meade, 841 F.2d at 1528; Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir.2003) (supervisory liability can be based on “creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue”); Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir.2003) (supervisory liability “when a supervisor’s custom or policy results in deliberate indifference to constitutional rights”) (internal punctuation omitted). Where the actions of the subordinates directly flow from the participation or conduct of the supervisor, liability may be appropriate. The supervisor deliberately caused the violation.
Next, some cases say a supervisor may cause violations when he or she has actual knowledge of past constitutional violations being carried out by a subordinate, and does nothing to stop future occurrences. See Hernandez, 341 F.3d at 145 (supervisory liability can result from “failure to act on information indicating that unconstitutional acts were occurring”); Chavez v. Ill. State Police, 251 F.3d 612, 651 (7th Cir. 2001) (liability is appropriate for supervisors who “know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see”); Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir.1999) (widespread abuse that is “obvious, flagrant, rampant and of continued duration” can lead to supervisory liability if the supervisor does not act to correct these behaviors); but see Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir.1999) (even if supervisors know of unconstitutional behavior, “liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a mere failure to act”) (internal quotation marks omitted).
Finally, a series of cases requires a standard of deliberate indifference. Those types of cases include the failure to train, the failure to supervise, and potentially other supervisory shortcomings. See, e.g., Carr v. Castle, 337 F.3d 1221, 1228 (10th Cir.2003) (analyzing a failure to train theory of liability in the context of an excessive force claim); Hernandez, 341 F.3d at 145 (supervisory liability can be based on “grossly negligent supervision of subordinates who committed a violation”); Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir.2001) (supervisor can be liable if he was aware of an unreasonable risk of injury, a specific supervisory practice could have averted this injury, the supervisor was indifferent to that risk, and the injury resulted from the failure to employ the supervisory practice); Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir.1998) (supervisory liability is appropriate if the supervisor exercised deliberate indifference in failing to supervise or train, and *1213 the injury resulted from this failure); Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997) (a supervisor can be held liable “if his failure to train or supervise the offending actor caused the deprivation”). In those cases, we may find that a supervisor has somehow caused the violation to occur by an egregious failure to act. See, e.g., Canton, 489 U.S. at 390 n. 10, 109 S.Ct. 1197 (hypothetically, equipping officers with firearms but neglecting to train them on their appropriate use could result in liability); Board of Cnty. Comm’rs v. Brown, 520 U.S. 397, 407-08, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (“[T]he existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training ... is the ‘moving force’ behind the plaintiffs injury.”) (citing Canton, 489 U.S. at 390-91, 109 S.Ct. 1197).
In sum, our decisions hold that supervisors are liable for constitutional violations they cause. The exact contours of causation — especially regarding an official’s state of mind sufficient for liability — are uncertain in light of Iqbal. But for purposes of this case, Dodds alleges the sheriff deliberately implemented an unconstitutional bail policy that violated his clearly established rights as a pretrial detainee and thereby caused him injury. As the majority ably demonstrates, his allegations are enough to survive summary judgment.

. I do not intend to address situations in which the right at issue was not clearly established. Nor do I address the debate over whether the theory of supervisory liability advanced must itself be clearly established at the time of the violation. See Murrell v. School District, 186 F.3d 1238, 1251 (10th Cir.1999); see also Poe v. Leonard, 282 F.3d 123 (2d Cir.2002) (plaintiff must show that “the supervisory liability doctrine under which [she] wishes to hold [the supervisor] liable” is clearly established). Rather, I emphasize that the question of supervisory liability is more coherently viewed through the lens of causation.

. The elements necessary to establish a § 1983 violation "will vary with the constitutional provision at issue.” Iqbal, 129 S.Ct. at 1948. This variation is required because § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes.” Baker v. McCollan, 443 U.S. 137, 145 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). For example, certain violations of the Eighth Amendment will require proof of deliberate indifference, see Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), whereas the Equal Protection clause is only violated when the official had a discriminatory purpose, see Washington v. Davis, 426 U.S. 229, 240, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). But procedural due process violations focus on the sufficiency of the procedural protections afforded the plaintiff, not the state of mind of the officials who establish or apply the policies. See, e.g., Wilkinson v. Austin, 545 U.S. 209, 224-25, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005). The state of mind required to prove a constitutional violation is distinct from the state of mind that may be required to show that a municipality caused a constitutional violation. See Canton, 489 U.S. at 388 n. 8, 109 S.Ct. 1197 ("[T]he proper standard for determining when a municipality will be liable under § 1983 for constitutional wrongs does not turn on any underlying culpability test that determines when such wrongs have occurred.”).

. Our recent cases have noted this potentially significant development, but have not determined the scope of its impact on our case law. In Lewis v. Tripp, 604 F.3d 1221 (10th Cir.2010), we noted the “significant debate about the continuing vitality and scope of supervisory liability, not only in Bivens actions, but also in § 1983 suits.” Id. at 1227 n. 3; see also Mink v. Knox, 613 F.3d 995 (10th Cir.2010); Sheldon Nahmod, Constitutional Torts, Over-Deterrence and Supeivisory Liability after Iqbal, 14 Lewis & Clark L.Rev. 279, 294-98 (2010) (discussing some alternatives). In both Lewis and Mink we avoided delving further into the morass given allegations that the supervisor in each case had directly participated in the constitutional violations at issue.