**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 23, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ROBERT D. GANDY,

     Plaintiff - Appellant,

v.

JERRY BARBER, Teacher II, Arkansas
Valley Correctional Facility; RICK
MARTINEZ, Programs Manager, Arkansas
Valley Correctional Facility; STEVE
HARTLEY, Warden, Arkansas Valley
Correctional Facility; RICK RAEMISCH,
Director, Colorado Department of
Corrections,

     Defendants - Appellees.

No. 15-1164
(D.C. No. 1:12-CV-03331-MSK-MJW)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BALDOCK**, and **HOLMES**, Circuit Judges.
_____

Robert D. Gandy, a Colorado prisoner proceeding pro se, brought this civil

rights case under 42 U.S.C. § 1983 asserting four claims for relief. The district court

dismissed two of his claims for failure to state a claim and entered summary

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

judgment in favor of the remaining two defendants on the other two claims. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's judgment.

## I. Background

Mr. Gandy is a Canadian national. In his amended complaint, he asserted that his rights under the Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261, were violated when prison officials refused to allow him to have unmonitored telephone calls with the Canadian consulate. Per prison policy, prisoners who wished to make unmonitored legal calls were required to provide an attorney registration number and other information pertaining to the legal counsel. Because the consulate did not have such information, the policy prevented Mr. Gandy from having unmonitored calls with the consulate. Meanwhile, his mail correspondence with the consulate was treated in the same manner as correspondence with the courts or an attorney.

Mr. Gandy's other three claims stem from an interaction he had with defendant Jerry Barber, a teacher at the prison, which preceded Mr. Gandy's transfer to a different prison. According to the amended complaint, Mr. Barber began yelling at Mr. Gandy during a conversation they were having with Mr. Gandy's work supervisor and another prisoner about the apprenticeship program. Mr. Barber allegedly threatened to have Mr. Gandy removed from the apprenticeship program and the prison. The interaction prompted Mr. Gandy to file a grievance against

2

Mr. Barber. Two months later, Mr. Gandy was laterally transferred to a different prison.

The amended complaint alleged that in retaliation for filing the grievance, Mr. Barber made good on his threat to have Mr. Gandy transferred to a different prison. The amended complaint alleged further that defendant Rick Martinez, a programs manager at the prison, violated Mr. Gandy's rights by authorizing or approving the transfer and that defendant Steve Hartley, the warden, failed to exercise his authority as supervisor with respect to the transfer.

Mr. Hartley and Mr. Martinez filed a "Motion to Dismiss and/or for Summary Judgment," raising numerous arguments. Defendant Rick Raemisch, the acting director of the Colorado Department of Corrections, also filed a motion to dismiss, adopting those arguments and raising the additional argument that Mr. Gandy did not have a private right of action under the Vienna Convention. The motions were referred to a magistrate judge, who recommended dismissing the claims against all three defendants. According to the magistrate judge's report, Mr. Gandy's Vienna Convention claim was time-barred and Mr. Gandy had failed to exhaust his administrative remedies with respect to his claims against Mr. Hartley and Mr. Martinez.

After receiving objections from Mr. Gandy and Mr. Raemisch[1], the district court adopted the recommendations in part, dismissing only Mr. Hartley and Mr. Raemisch from the case. As pertinent to this appeal, the court concluded that Mr. Gandy's Vienna Convention claim failed because the Vienna Convention does not confer individually enforceable rights, and therefore Mr. Gandy lacked a judicial remedy for any alleged violations of it. And the court concluded that Mr. Gandy's fourth claim failed because Mr. Gandy had not made any showing that Mr. Hartley had personally participated in, or even been aware of, Mr. Gandy's transfer to another prison.

The remaining defendants, Mr. Barber and Mr. Martinez, moved for summary judgment, and Mr. Gandy filed a response. In granting the motion, the district court concluded that Mr. Gandy could not establish a prima facie claim against Mr. Barber because even if he did threaten to have Mr. Gandy transferred, Mr. Gandy adduced no evidence that he had the authority to transfer him or that he took any action on the alleged threat. The court also concluded that Mr. Gandy made no showing that a lateral transfer from one prison to another would chill an inmate of ordinary firmness from filing a grievance. Thus, even assuming Mr. Gandy could show that

---

[1] Mr. Raemisch did not object to the magistrate judge's recommendation that the first claim should be dismissed on statute of limitations grounds. Rather, he argued that if the district court chose not to adopt that part of the recommendation, it should consider dismissing that claim on the alternative grounds set forth in the defendants' motions to dismiss that the magistrate judge did not rely on.

4

Mr. Martinez transferred him because he filed a grievance, his alleged injury was insufficient to state a retaliation claim.

## II. Analysis

In his opening brief on appeal, Mr. Gandy argues that the district court erred by (1) concluding that the Vienna Convention does not confer upon him an enforceable right to unmonitored telephone calls with the Canadian consulate; (2) finding he failed to allege that Mr. Hartley personally participated in causing him to be transferred; (3) concluding that there was no evidence Mr. Barber helped bring about the transfer; and (4) denying his discovery request for the e-mail correspondence between the defendants. To the extent he attempts to raise additional issues in his reply brief, we decline to consider them. *See Garcia v. LeMaster*, 439 F.3d 1215, 1220 (10th Cir. 2006).

We review de novo the district court's dismissal of two of Mr. Gandy's claims for failure to state a claim upon which relief could be granted. *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010). We also review de novo the district court's grant of summary judgment on another of his claims. *Bryson v. City of Oklahoma City*, 627 F.3d 784, 787 (10th Cir. 2010). We review for an abuse of discretion the district court's discovery rulings. *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 647 (10th Cir. 2008).

We construe liberally the allegations in pro se complaints. *Childs v. Miller*, 713 F.3d 1262, 1264 (10th Cir. 2013). But pro se parties must follow the same rules of procedure as other litigants, *see Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir.

5

2007), and we will not supply additional factual allegations or construct legal theories on their behalf, *see Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009).

## A. Vienna Convention Claim

Although the district court dismissed Mr. Gandy's first claim on the ground that the Vienna Convention does not confer individually enforceable rights, "we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011). For the purpose of this appeal, we assume without deciding that the Vienna Convention confers individually enforceable rights and affirm on the ground that Mr. Gandy's amended complaint failed to state a claim under the provisions he relied upon. *See Medellín v. Texas*, 552 U.S. 491, 506 n.4 (2008) (assuming without deciding that Article 36 of the Vienna Convention grants foreign nationals certain rights that are individually enforceable); *see also United States v. Minjares-Alvarez*, 264 F.3d 980, 986 (10th Cir. 2001) (noting that whether the Vienna Convention gives rise to any individually enforceable rights remains an open question and that the Tenth Circuit has declined to address the issue).

In arguing that prison officials violated his rights under the Vienna Convention by denying him the right to have unmonitored calls with the Canadian consulate, Mr. Gandy relies exclusively on Article 35, titled, "Freedom of communication." The amended complaint cited only the first two subsections of the article; the remaining subsections of

6

Article 35 pertain to the consular bag and the consular carrier, and are clearly

inapplicable to non-consular officials. Those two subsections provide as follows:

> (1) The receiving State shall permit and protect freedom of communication
> on the part of the consular post for all official purposes. In communicating
> with the Government, the diplomatic missions and other consular posts,
> wherever situated, of the sending State, the consular post may employ all
> appropriate means, including diplomatic or consular couriers, diplomatic or
> consular bags and messages in code or cipher. However, the consular post
> may install and use a wireless transmitted only with the consent of the
> receiving State.

> (2) The official correspondence of the consular post shall be inviolable.
> Official correspondence means all correspondence relating to the consular
> post and its functions.

21 U.S.T. 77, 596 U.N.T.S. 261.

Interpretation of an international treaty is a question of law we review de novo.

*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 988

(10th Cir. 2004). When interpreting a treaty, we first look to its terms to determine its

meaning. *Id.* These provisions say nothing about allowing foreign nationals to make

unmonitored telephone calls from prison to their consulate. Moreover, the amended

complaint conceded that Mr. Gandy's written correspondence with the consulate was

"treated in the same manner as correspondence with an attorney or the courts," Aplt.

App. at 47, belying the notion that Mr. Gandy was denied the right to freely communicate

with the Canadian consulate. In the absence of express language, we decline to construe

the term "freedom of communication" as including a right to unmonitored telephone calls

for foreign nationals who are convicted in state court and become state prisoners. Nor are

we persuaded by Mr. Gandy's contention that the prison's policy violates the requirement

under the Vienna Convention that official correspondence with the consular post be inviolable. "Correspondence" is defined as "the communication between persons by an exchange of letters" or "any communication by letter." Webster's Third New International Dictionary 511 (1976). We therefore conclude this claim was properly dismissed, albeit on different grounds than those relied upon by the district court. *See Richison*, 634 F.3d at 1130.

## B. Claim Against Mr. Hartley

Mr. Gandy argues the district court erred by dismissing his claim against Mr. Hartley because the allegations in the amended complaint failed to show that he personally participated in having Mr. Gandy transferred to another prison. We discern no error.

Although a prisoner does not have a constitutional right to remain at a particular prison, prison officials do not have "unbridled discretion to transfer inmates in retaliation for exercising their constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 561-62 (10th Cir. 1990). To establish a § 1983 claim based on supervisor liability, a plaintiff must show an "affirmative link" between the supervisor and the unconstitutional acts of his or her subordinates. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). "[T]he supervisor must be personally involved in the constitutional violation, and a sufficient causal connection must exist between the supervisor and the constitutional violation." *Id.* (internal quotation marks omitted).

Mr. Gandy attempts to connect Mr. Hartley's conduct to his transfer in two ways. First, according to the amended complaint, after Mr. Barber threatened to remove him from the apprenticeship program, Mr. Gandy wrote to the Canadian consulate that he feared he might be retaliated against if he filed a grievance. The complaint states that his letter prompted the consulate to send Mr. Hartley an official letter informing him that Mr. Gandy should not be retaliated against for exercising his right to file a grievance. However, even assuming Mr. Hartley received such a letter and that Mr. Gandy's transfer was retaliatory, neither fact establishes that Mr. Hartley was personally involved in the transfer.

Second, Mr. Gandy's allegation that Mr. Hartley had, in the past, made statements expressing his desire to have Mr. Gandy transferred is also unavailing. A prisoner claiming retaliation must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier*, 922 F.2d at 562 n.1. Even assuming the allegation is true, statements made before Mr. Gandy filed his grievance cannot be used to show that the filing of the grievance was the "but for" cause of any action by Mr. Hartley. *See Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (concluding that allegations of retaliation fail where the plaintiff does not show that a defendant's alleged retaliatory motive was the "but for" cause of his or her actions).

## C. Claim Against Mr. Barber

Mr. Gandy contends that the district court erred by granting summary judgment in favor of Mr. Barber because "even though [he] did not have the ability

9

on his own to transfer Gandy . . . , he had the ability and the intention to confer with others who did have the ability to transfer Gandy from the facility, and . . . did confer and recommend that Gandy be transferred." Aplt. Br. at 7. We discern no error.

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where, as here, the moving party has met its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). The nonmoving party "may not simply rest upon its pleadings" but instead must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal quotation marks omitted) ("[F]acts must be identified by reference to affidavits, deposition transcripts, or specific exhibits . . . ."); *see also Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) ("To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."). Mr. Gandy has identified no such facts, offering only speculation and conjecture in support of his argument. Under these circumstances, the district court properly determined that Mr. Gandy's conclusory allegations were insufficient to withstand Mr. Barber's motion for summary judgment.

10

**D. Discovery Ruling**

In response to Mr. Gandy's written request for copies of any e-mails referring to him that the defendants sent or received around the time of his transfer, the defendants stated that "they [did] not have access to any e-mails nor [did] they recall any concerning this issue." R. at 218. Mr. Gandy argues that the district court erred by denying his motion to compel the defendants to produce the e-mails. However, he offers no evidence that supports the inference that the defendants purposefully withheld evidence or acted in bad faith. And in the absence of any evidence that the e-mails in fact existed, we cannot say that the district court abused its discretion by denying Mr. Gandy's motion to compel.

**III. Conclusion**

The judgment of the district court is affirmed. Mr. Gandy's motion to proceed on appeal without prepayment of fees pursuant to 28 U.S.C. § 1915 is granted, and he is reminded of his continued obligation to make partial payments until the filing fee is paid in full.

Entered for the Court

Jerome A. Holmes
Circuit Judge

11